# McCarthy *v.* McCarthy.

*Bill in Equity against Administrator and Heirs of Deceased Trustee, for Account of Rents and Profits.*

1. *Trust created by deed.*—An express trust, as distinguished from a trust implied by law, is created by the direct and positive act of a party,

[McCarthy v. McCarthy.]

manifested by some instrument of writing; and when the legal title to property is conveyed to one person, to be held by him for the benefit of another, an express trust is created, without regard to the particular words or form of the conveyance.

2. *Marriage-settlement construed as creating express trust; purchase of life-estate by trustee.*—A deed executed in contemplation of marriage, by which the grantor conveys property to a third person, "upon trust and confidence," and "for the sole use, profit and benefit of" the intended wife during her life, with remainder to the surviving child or children of the marriage, creates an express trust; and the wife, after the death of the husband and grantor, having sold and conveyed her interest to the trustee, declaring in the deed that, on her death, he was to surrender the property to her surviving child, the legal title is henceforth held by the trustee for his own use and benefit, during the life of the wife, with the right of possession and to collect and hold the rents and profits, and there is an express trust in favor of the remainder-man.

3. *Statute of limitations, and adverse possession, as between trustee and beneficiaries.*—The statutes of limitation do not apply to express trusts, which are peculiarly and exclusively the subjects of equity jurisdiction; the possession of the trustee being considered the possession of the *cestuis que trust,* and not becoming adverse until there has been an open disavowal of the trust, brought home to the knowledge of the beneficiary with unquestionable certainty; and such a trust is only barred, on the doctrine of prescription, by the lapse of twenty years.

4. *Discharge of trustee.*—A trustee may be discharged from his fiduciary relation, either by the expiration of the trust, or by its full performance, which involves a settlement between him and the beneficiary, and a surrender or transfer of the property; but the execution of a conveyance as a deed of gift, accompanied with a surrender of the property, can not operate to discharge him from his fiduciary relation, nor relieve him from liability to account for the rents and profits received, the beneficiary being an infant remainder-man, who had long resided with the trustee as a member of his family, and was ignorant of the existence of the trust.

5. *Fraud, as exception to statute of limitations.*—An infant remainder-man under a deed, residing from infancy with the trustee as a member of his family, and being kept in ignorance of the trust and her rights under it, until the discovery and surrender of the deed on the death of the trustee, is allowed twelve months after such discovery within which to file a bill for an account of rents and profits received (Code, § 3242), if the statute of limitations be applicable to the case; and she is not chargeable with constructive notice of the deed, under such circumstances, because it had been duly recorded many years before.

6. *When creditor may maintain bill against administrator and heirs of deceased debtor, without exhausting legal remedies.*—A creditor can not, in the absence of some special equity, maintain a bill in equity to reach and subject the lands of his deceased debtor, until he has exhausted his legal remedies by a judgment at law against the administrator, and the return of an execution unsatisfied against him and his sureties; but this principle does not apply to a bill filed by the beneficiary of an express trust, against the administrator and heirs of the deceased trustee, for an account of rents and profits received.

7. *Parties to bill; joinder of heirs and administrator as defendants.* When a bill seeks an account of rents and profits received by a deceased trustee, whose estate, though solvent, consists mostly of lands, the heirs are properly joined with the administrator as defendants, being interested in the account; and they may make any defense which would be available to the administrator.

8. *Multifariousness.*—When a bill does not state facts which render it multifarious, the prayer for relief can not render it multifarious.

[McCarthy v. McCarthy.]

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 5th October, 1880, by Mrs. Joanna McCarthy, a married woman, whose maiden name was Millrick, or Milerick (as the name is indifferently spelled in the transcript), and who was the daughter and sole child of Richard and Mary Millrick, deceased; against the widow, administratrix and heirs of James McCarthy, deceased; and sought an account of the rents and profits of certain real estate in the city of Mobile, alleged to have been received by said James McCarthy, as trustee, for the use and benefit of the complainant, and never accounted for or paid over to her. The complainant claimed the property under a deed, a copy of which was made an exhibit to her bill, and which was dated February 4th, 1852. By this deed, said Richard Millrick, in contemplation of his intended marriage with Mary Lahey, who was the step-daughter of said James McCarthy, conveyed the property "to said James McCarthy, his heirs and assigns, upon the trust and use, intent and purpose, hereinafter limited and declared; to have and to hold the same to him, the said James McCarthy, his executors and administrators, upon trust and confidence, nevertheless, for the sole use, profit and benefit of the said Mary Lahey that now is, and her heirs by our said intended marriage, if any; but, in the event of the said Mary dying without issue, and the said Richard Millrick should survive her, said McCarthy is bound by this instrument to re-convey to the said Richard the above-mentioned parcel and lot of land." The deed contained an express covenent on the part of the trustee, "faithfully to perform and fulfill the trust aforesaid;" and it was signed by both him and the grantor, duly acknowledged by both of them, and recorded on the day after its date.

Richard Millrick died in 1855, leaving the complainant as the only child of the marriage. Afterwards, on the 30th July, 1855, Mrs. Mary Millrick, the widow, conveyed her interest in the property to said James McCarthy, the trustee, in consideration, as therein recited, of $150 in hand paid; the deed containing these words: "To have and to hold my said interest in and to said lot of land, to himself, the said James McCarthy, for his own exclusive use and benefit, for and during my life; for it is expressly understood that the interest, or *quantum* of the estate of the said Mary Millrick, is a life-estate only, and after her death, her infant daughter Joanna is legally entitled to the same; as will more fully appear by reference to a deed executed by Richard Millrick, myself and the said James McCarthy, bearing date the 4th February, 1852, and which was executed in consideration of the intended marriage between myself and the said Richard; which marriage took place, and

my daughter Joanna is the only issue of said marriage, and said Richard Millrick has departed this life. Therefore it is that I have a life-estate in said lot, and my daughter the remainder; and I sell my life-estate in manner aforesaid, and at my death the said James McCarthy is to deliver up and surrender said lot to my daughter Joanna, or her heirs; but, until my death, he, the said McCarthy, is not to be accountable to any one for the rents or profits of the said lot, but shall receive and hold the same for his own use."

Mrs. Mary Millrick died in August, 1858, and her infant daughter thenceforward resided in the house of said James McCarthy, as a member of his family, until her marriage in 1876. The bill alleged that said McCarthy took possession of the property, claiming and treating it as his own after his purchase of the life-estate, and receiving the rents and profits, until he surrendered the possession to the complainant on her marriage; that on the night of her marriage he delivered to her a deed of gift of the property, a copy of which was made an exhibit to the bill; that said McCarthy "intentionally and fraudulently concealed" from her all information of the said deeds above mentioned, and she had no knowledge or notice of her rights and interest in the property until after the death of said McCarthy, in November, 1879, when the deeds were found among his papers, and were then delivered to her by the attorney of the administratrix. It was alleged, also, that the estate of said McCarthy was solvent, and owed no debts, but that the property consisted mostly of real estate, and the personal assets were not sufficient to pay the complainant's claim as asserted in her bill. On these facts and allegations, the bill prayed an account of the rents and profits of the property from the death of Mrs. Millrick, and a decree against the administratrix and heirs for the amount found due; and on their failure to pay it within a time named, "that it be decreed a charge on the real property of said estate, and the same be ordered to be sold to satisfy the same."

The administratrix filed a demurrer to the bill, on the grounds of multifariousness and misjoinder of parties, and "because it seeks to declare a debt of said James McCarthy a charge upon the real estate, without alleging that there is not a sufficiency of personal property to pay the same." The heirs joined in this demurrer, but they filed no answer, though a formal answer was filed by the guardian *ad litem* of one who was an infant. An answer was filed by the administratrix, admitting the execution of the several conveyances as above stated, and denying that there was any fraudulent concealment of the complainant's rights on the part of said McCarthy; alleging that he supported, clothed and educated the complainant from infancy,

[McCarthy v. McCarthy.]

after her mother had deserted her, and that the sums so expended by him, with taxes paid, and repairs and improvements made, exceeded the rents and profits received.

The prayer of the bill was afterwards amended, by leave of the court, by adding these words: "Or, if the court should be of the opinion that it has no jurisdiction to charge the amount found to be due to complainant on the lands descended to the heirs, or to order the land to be sold to pay the same, that the court will then require said respondents to show what amount said James McCarthy received, or ought to have received, as the rents, issues and profits of said trust estate, and will decree that said administrator pay the same as a liability against said estate, if she has the money sufficient to pay the same; and if not, that such amount be established as a liability against said estate, for which said administratrix may apply to the Probate Court for an order to sell said realty, or so much thereof as may be necessary to pay the same, unless said heirs come forward and discharge said liability."

The chancellor overruled the demurrers to the bill, and, on final hearing on pleadings and proof, held that the complainant was entitled to relief; and he ordered an account to be stated by the register, as to the amount of rents received from the property by said James McCarthy after the death of the complainant's mother, the value of the repairs and improvements made by him during the same period, and the expenses of the complainant's maintenance and education, after deducting the value of her personal services in his family during that time. At the next term, the register reported the accounts as stated by him, showing a balance of $4,400 due to the complainant, excess of rents above expenditures; and the report being confirmed without objection, the chancellor rendered a decree for that sum against the administratrix, and ordered an execution to be issued, if the amount was not paid within five days after the adjournment of the court, to be levied of the goods and chattels, rights and credits of the said James McCarthy, in her hands to be administered. From this decree all of the defendants appeal, and they jointly assign as error the overruling of the demurrers to the bill, and each of the chancellor's decrees.

J. L. & G. L. SMITH, for appellants.—(1.) To charge the lands of the deceased, the bill should have been filed in the name of all the creditors, and should have alleged a judgment against the administratrix, and the insolvency of her and her sureties.—*Scott v. Ware*, 64 Ala. 181; *Darrington v. Borland*, 3 Porter, 10. Being defective as a bill to charge the lands, no cause of action against the heirs was shown, and hence there was a misjoinder of parties.—Cases *supra*. It is doubtful

whether the bill shows a case within the jurisdiction of the court.—*Abrams v. Hall*, 59 Ala. 386. (2.) The heirs were not proper parties, and properly objected by their demurrer, which was overruled; and though no decree was rendered against them, they are concluded by the decree, and will thereby be prevented from pleading the statute of limitations, when the administratrix attempts to procure an order from the Probate Court to sell the lands.—*McDonald v. Mobile Life Ins. Co.*, 65 Ala. 258; *Mervine v. Parker*, 18 Ala. 241; *Trustees v. Keller*, 1 Ala. 406; *Tarver v. Davis*, 65 Ala. 98; *Scott v. Ware*, 64 Ala. 174. (3.) By the express terms of the deed executed by Richard Millrick to McCarthy as trustee, the trust terminated on the death of Mrs. Millrick, and the legal title then vested in the complainant; and no trust whatever in her favor was created by Mrs. Millrick's conveyance to McCarthy. *Comby v. McMichael*, 19 Ala. 747; *McBrayer v. Cariker*, 64 Ala. 50. The rents were received subject only to an implied trust, and the claim was within the bar of the statute of limitations.—*Maury v. Mason*, 8 Porter, 218; *James v. James*, 55 Ala. 532; *Martin v. Br. Bank*, 31 Ala. 115; *Lockard v. Nash*, 64 Ala. 385. The bar of the statute is not avoided by the complainant's minority, since the bill was filed more than three years after she had attained her majority; and the proof fails to sustain the allegations of a fraudulent concealment.—*James v. James*, 55 Ala. 525; *Martin v. Br. Bank*, 31 Ala. 115; *Underhill v. Fire Dep. Ins. Co.*, 67 Ala. 50. It was not necessary that the statute of limitations should be specially pleaded, the facts out of which it arises being stated in the answer (Code, § 3783); but, if the statute is not properly pleaded, the greater part of the claim is a stale demand, and this defense arises on the proof.—*Johnson v. Johnson*, 5 Ala. 90; *James v. James*, 55 Ala. 525; *Nettles v. Nettles*, 67 Ala. 599. The facts of this case show with peculiar force the justness and propriety of this equitable defense; this trustee being an uneducated man, who kept no accounts of rents or expenses, and whose estate is now sought to be charged with an accumulation of rents, during a long period of time, on a basis which few trust estates have earned under the most prudent management.

OVERALL & BESTOR, *contra.*—The deed from Millrick to James McCarthy, which was accepted by the latter, creates an express trust.—2 Story's Equity, §§ 962–64, 974–77, 981–83. Such a trust is exclusively of equitable cognizance, and the statutes of limitations do not apply to it; and if the statute was applicable, it was waived because not specially pleaded.—*Bolling v. Jones*, 67 Ala. 508; *Brooks v. Norris*, 11 Howard, 204. If the benefit of the statute had been properly invoked, the

averments of ignorance and fraudulent concealment would avoid its operation; and these averments are fully sustained by the proof. The heirs were properly joined as defendants with the administratrix, because there was a deficiency of personal assets, and they were interested in the account to be stated, the lands being liable for the debt after the personalty was exhausted.—Story's Eq. Pl. §§ 172-3. That the bill was not multifarious, see cases cited in 1 Brickell's Digest, 719, § 1158.

SOMERVILLE, J.—An *express* trust, as distinguished from one that is merely implied by law, is a trust created by the direct and positive act of a party, manifested by some instrument of writing, whether by deed, will, or otherwise.—2 Story Eq. Jur. § 980. Every trust is clearly of this class, where the legal title of property is conveyed to a trustee, to be held by him for the benefit of another, no particular words or formality being required for its creation.—1 Perry on Trusts, § 82; Law of Trusts (Tiff. & Bul.) 11; 2 Story's Eq. Jur. § 980; *Cresswell v. Jones*, 68 Ala. 420.

There can be no question of the fact, in our opinion, that the appellants' intestate, James McCarthy, was the trustee of an express trust, under the plain construction of the two deeds by which was conveyed to him the lot of land described in complainant's bill. The deed from Richard Millrick, designed as a marriage-settlement for his intended wife, expressly declares, in the *habendum* clause, that he was to hold the lot "upon *trust and confidence*," and "for the sole use, profit and benefit of Mary Lahey," the mother of the complainant, during her life; and words are used which unquestionably create a remainder in the complainant, she being the sole surviving heir of her mother by the contemplated marriage.—*May v. Ritchie*, 65 Ala. 602. The nature of the trust is still further emphasized by the deed of Mary Millrick, by which she sold and conveyed her life-estate in the property to McCarthy, her trustee, with an express declaration that he was to surrender it to the complainant upon the grantor's death. We find in the contents of these written instruments every element which goes to characterize an express trust, under the definition which we have above stated. Upon their execution and delivery, the legal title of the entire property became vested in James McCarthy, for the benefit of himself during the life of Mary Millrick, with equitable remainder of the usufruct in favor of complainant, with the right of possession also in the trustee, and the incidental power to collect the rents and profits. Among the most common class of express trusts are those created by marriage-settlements, as also conveyances to trustees to receive the rents

of the trust property, to be applied to the use of designated beneficiaries.

In this view of the case, it is immaterial whether the statute of limitations was properly pleaded or not, inasmuch as this defense has no application to express trusts of this particular character.—2 Brick. Dig. 217, § 10; 2 Perry on Trusts, § 863. The possession of the trustee is considered to be also the possession of the beneficiary, and, consequently, is not hostile or adverse within the meaning of the statute, until there is an open disavowal of the trust, which must be brought home to the knowledge of the beneficiary with unquestionable certainty. Until this is done, no length of time, less than twenty years, will operate as a bar; and this rule of twenty years is one of presumptive evidence, based on the doctrine of prescription, and not upon the statutes of limitation.—*Garrett v. Garrett*, 69 Ala. 429; 2 Perry on Trusts, § 863; Law of Trusts (Tiff. & Bul.), 716. It is true that there are some cases, of mere money trusts, where the remedy at law and that in equity are concurrent, and the statute of limitations has been adjudged to apply alike in both forums.—*Maury v. Mason*, 8 Port. 222; *Wood v. Wood*, 3 Ala. 756. But it seems generally settled, that the statute is no defense to such express or direct trusts as are peculiarly and exclusively the subjects of equity jurisdiction, and are subsisting, recognized and acknowledged, as between the trustee and *cestui que trust.*—*Maury v. Mason, supra.*

In *Pinkston v. Brewster*, 14 Ala. 315, we have a case essentially similar in principle to the one in hand. There, certain property had been conveyed to the defendants as trustees in a deed of trust. They sold the property under the power conferred in the deed, and misapplied the proceeds. Upon bill filed against them by the beneficiaries, it was held that the trust was a direct one, peculiarly and exclusively cognizable in a court of equity, and that the statute of limitations of six years was no bar to the suit. The general rule, as stated by Mr. Perry in his work on Trusts, seems to be, that "where the *cestui que trust* seeks an account of the rents and profits from an *express* trustee, there is no limitation of time, as the statute of limitations does not apply." If the claim to rents and profits rests upon the *legal* title, the remedy may be then at law, and the legal limitation be adjudged applicable.—2 Perry on Trusts, § 871.

It is insisted, however, that the trust assumed by James McCarthy terminated in September, 1876, when he conveyed the *corpus* of the trust property to complainant, upon the occasion of her marriage, and that it does not, therefore, come within the above rule, as being yet subsisting and acknowledged. We understand the rule to be, that a trustee may, of course, be dis-

charged from his fiduciary relation, either by the expiration, or by the full performance of the entire trust. This involves the duty of a settlement between him and the *cestui que trust*, accompanied with a conveyance or transfer of the trust property according to the terms of the trust.—2 Perry on Trusts, §§ 921–922. It can not be justly contended, that there was any thing resembling a settlement of the trust in this case. The evidence shows that the complainant was kept in ignorance of her ownership of the trust property, during the entire period of her minority. When the deed was delivered to her by McCarthy, it was under the ostentatious guise of a mere gift, or benefaction. Nothing was disclosed as to the trust nature of the property, and hence nothing was known as to the rents, which had for so many years been collected and appropriated by the simulated donor, during the period of time when the legal title to the trust property was in him. It would be in the very teeth of equity and good conscience to call this an accounting to the *cestui que trust;* and the trustee can not be discharged, until he has accounted in such a manner as the court shall consider that he ought to have done.— *Wedderburn v. Wedderburn,* 4 Myl. & Cr. 53 ; *Beckford v. Wade,* 17 Vesey, 100 ; Law of Trusts (Tiff. & Bul.), 715–716. All express trusts of this character must be regarded as continuing to subsist, until there is an open disavowal or repudiation of the trust, by clear and unequivocal words or conduct on the part of the trustee, and this is brought to the notice or knowledge of the *cestui que trust.*—2 Perry on Trusts, § 864. Until there is a settlement of the trust, or an open and unmistakable repudiation of it, it can not, in the absence of expiration, be regarded otherwise than as subsisting. It has been said, that it is the duty of the trustee, if he intends to claim the estate, to resign the trust, and deliver over the possession which he received as trustee.—2 Perry on Trusts, § 863. As to the rents collected and misappropriated by McCarthy, we are of opinion that the trust, under the circumstances of this case, had not terminated, and that the statute of limitations of six years was no bar to their recovery. To permit an express trustee to escape liability by conveying to the *cestui que trust* the *corpus* of the trust property, and at the same time to secretly withhold the rents, would be to allow an unwarrantable fraud upon the jurisdiction of the Chancery Court.

We are, furthermore, of opinion that the averments of fraud are sufficiently sustained by the proof, to take the present case out of the operation of the statute of limitations, even if it be applicable upon general principles. The statute allows the aggrieved party twelve months within which to sue after the discovery of "the facts constituting the fraud."—Code, 1876,

[McCarthy v. McCarthy.]

§ 3242; *Porter v. Smith*, 65 Ala. 169. The evidence strongly supports the averment of complainant's entire ignorance of her rights until within a few months before the filing of the present bill. The trust in McCarthy was created before the birth of complainant, and he is shown to have purchased the life-estate in the trust property from Mrs. Millrick when the complainant was an infant of tender years, residing with him beneath his roof, as a member of his family, and under his care and maintenance. This property he claimed as his own, collecting and appropriating the rents as if he were the owner of them in fee-simple. Upon the marriage of the complainant, he made what purported to be a mere gift of the trust property to her, which, of itself, was a re-assertion of his private ownership, and a misrepresentation of the capacity in which he really held it, which was that of a trustee for the complainant. These facts, under all the circumstances, must be construed as a fraudulent concealment of the cause of action on the part of McCarthy. The evidence satisfies us that complainant was excusably ignorant of the existence of the trust until the trust deeds, which were found among the papers of the trustee after his death, were brought to light, and delivered to her as muniments of her title to the trust property. These deeds, it is true, were recorded, one of them as far back as the year 1852, and the other about three years later. We do not think, however, that the constructive notice of the nature of McCarthy's possession, as imported by these deeds, should charge the complainant with a knowledge of her rights. The blind ignorance in which she seems to have been kept, by the fraudulent conduct of her trustee, was sufficient to drown all suspicion of unfairness, and stupify the activity of inquiry, particularly in view of the fact of her infancy, her position of dependence, and the relations of confidence existing between her and McCarthy, with its attendant influence exerted by these facts.—2 Perry on Trusts, § 867; *James v. James*, 55 Ala. 525; *Johnson v. Johnson*, 5 Ala. 90; *Morgan v. Morgan*, 69 Ala. 80.

It is contended that the Chancery Court has no jurisdiction in this case, because the complainant did not first exhaust her remedies at law, by obtaining a judgment in a court of law, and pursuing to insolvency the personal representative of the deceased debtor and the sureties on her administration bond. This is undoubtedly the established rule, where the creditor of a decedent invokes the jurisdiction of a court of equity, in order to subject lands, descended or devised, to the payment of a debt of the deceased owner, and there is *no other separate and distinct ground of equity jurisdiction* shown by the complainant's bill.—*Scott v. Ware*, 64 Ala. 174, and cases cited. The court here, however, having taken jurisdiction of the case,

[McCarthy v. McCarthy.]

upon the distinct ground of bringing a trustee to an account of his trust, will make its jurisdiction effectual for the purposes of complete relief, and will not drive the complainant to a court of law, that he may first establish his claim, by obtaining judgment with the return of *nulla bona* against the administratrix and her sureties. This could be required only on the false theory, that a court of equity will decline jurisdiction of trusts, unless there be an additional or superadded ground of jurisdiction, at least in cases of the present character.—*Johnson & Seats v. Smith's Adm'r*, 70 Ala. 108; *Shipman v. Furniss*, 69 Ala. 555; *Dargan v. Waring*, 11 Ala. 988. The bill avers that the estate of the deceased trustee consisted entirely of real estate, and that he owned no personal property liable to the satisfaction of his debts, and owed no other debt than that due the complainant; and these facts are not denied in the answer.

There is no misjoinder of parties defendant to the bill. The purpose of the bill is to establish a trust claim against the decedent's estate, so as to bind the realty of which he died seized. The heirs were interested in the taking of this account, as the real estate in their hands was an auxiliary fund liable to be charged with the debt in the absence of any personal property, which was a primary fund for this purpose.—Story's Eq. Pl. (9th Ed.) §§ 172–173; *Steele v. Steele's Adm'r*, 64 Ala. 438. They were therefore proper, if not indispensable parties, and had a right to make any defense against the claim which would have been available to the personal representative. It is no objection that the judgment precludes them from such defenses upon an application by the administrator to the Probate Court to sell the lands of the decedent to pay the debt. This was the very purpose for which they were made parties, so as to prevent unnecessary litigation.

There is nothing in the suggestion as to the bill being multifarious. Where a bill is not rendered multifarious by an alternative statement of facts, it cannot be rendered so by an erroneous prayer, invoking some particular relief to which the complainant is shown not to be entitled. It is the distinct and unconnected nature of the several matters stated by way of fact in the bill, and not the redundancy of the prayer for relief, which renders it objectionable on the ground of multifariousness.

The decree of the chancellor is affirmed.