# Holt *v.* Wilson.

*Bill in Equity to establish Equitable Title to Land, for an Account of Rents, and for Partition.*

1. *Antenuptial contract construed; when express trust in land created by.*—A testator, having devised a tract of land to his widow and grand-child, share and share alike, further provided that, in the event the child died before her marriage or maturity, the whole tract should belong to the widow. After the testator's death, the widow, contemplating a second marriage, entered into an antenuptial contract, whereby it was agreed that, in the event she should become entitled to the child's share in the land, the same should "enure and belong to" the intended husband, and thereafter they should "hold and own the land jointly and equally." After the second marriage was consummated, the child, while an infant of tender years, died. *Held*, that by the contract an express trust was, in effect, declared on the part of the widow, that she would stand seized of the legal title to the use of her intended husband, which became operative upon the death of the child.

2. *What a recognition of the trust as continuing; when not a stale demand.*—The trust having become operative on the death of the child, in May, 1862, and the widow and the husband having held and occupied the lands, as equal tenants in common, from the time of their marriage, in 1861, to the death of the husband, in 1865, it *was further held*, on a bill filed by the heir of the husband, in January, 1883, against parties claiming adversely to him through the widow, for an enforcement of the trust, that the husband having entered under the provisions of the marriage contract, his possession must in equity be referable to it, and the continuance of such possession must be regarded as evidence of a recognition of the trust as existing, continuing, and undischarged; and that, the bill having been filed within twenty years from the death of the ancestor, no presumption of a settlement or discharge of the trust can arise from lapse of time, although the trust may have been repudiated immediately after his death.

3. *Same; statute of limitations.*—The bill also alleging that the land was held and occupied by the widow, after the death of complainant's ancestor, until her death, in May, 1873, and negativing an open disavowal of the trust by her, brought home to the complainant's knowledge, and any outward and unequivocal act done by her, amounting to an ouster, and also negativing every inference of an adverse possession until the year 1877, it *was further held* that complainant's demand was not barred by the statute of limitations of ten years.

4. *Same.*—An adverse possession did not originate in favor of the

[Holt v. Wilson.]

widow, in such case, merely from the fact that, after her second husband's death, she clandestinely and fraudulently destroyed the marriage contract creating the trust in the land.

5. *Deed to husband and wife; how they take under the rule at common law.*—While at common law husband and wife do not take, under a deed to land executed directly to them during coverture, by moieties, as tenants in common take, but by entireties, with the right of survivorship, this rule does not apply to a conveyance executed prior to their marriage; and hence, it has no application to the facts of this case, the marriage contract, creating the rights of the parties, having been executed prior to the marriage, although the actual title of the husband vested afterwards, under the terms of the contract.

6. *Fraudulent concealment of cause of action; § 3242 of Code construed.*—The fact that the widow, after the death of the complainant's ancestor, administered on his estate, destroyed the marriage contract, which was not recorded, and the existence of which was unknown to the complainant, and failed to disclose its existence to the complainant while she was acting as administratrix, or to her successor, upon her resignation of the trust, is such a fraudulent concealment of complainant's cause of action as brings the case within the influence of the statute giving a party, seeking relief on the ground of fraud, where the statute has created a bar, one year within which to prosecute his suit after the discovery of the facts constituting the fraud (Code, 1876, § 3242).

7. *Same; discovery of; when complainant not guilty of laches.*—The complainant having been only thirteen years of age when his father died, in 1865, and not residing in his father's family, but in another State, and having received, during the widow's administration, or soon after her resignation, trustworthy information, that his father's estate was insolvent, and that there was no distributive share coming to him, and having been, for the first time, apprised of the existence of the antenuptial contract during a visit to this State a few months before filing his bill, in 1883, *it was further held,* that these facts sufficiently negative any laches on the part of the complainant, which might otherwise be inferred from his delay in seeking relief.

8. *When bill not multifarious.*—The lands having been sold in separate lots, under a decree of the probate court, as belonging to the widow's estate, by her administrator, to different persons, the several purchasers may be joined as defendants to a bill seeking to enforce the trust.

APPEAL from Montgomery Chancery Court.

Heard before Hon. JOHN A. FOSTER.

This was a bill in equity, exhibited by Waldo P. Wilson against James L. Holt, Reuben W. Sharp, J. C. Gibson and G. H. Gibson, and was filed on 29th January, 1883. Afterwards the bill was amended, and, as amended, the case made thereby may be stated as follows : On or about 1st February, 1860, David Chambliss departed this life, a resident of Montgomery county in this State, seized and possessed of a large and valuable plantation near the city of Montgomery, with other property, and leaving a last will and testament, which was duly admitted to probate on 14th February, 1860, and a copy of which is exhibited with the bill; and also leaving him surviving "his widow, Emeline S. Chambliss, and a granddaughter, Sallie David Chambliss. By the terms of

said will, the said David Chambliss devised and bequeathed his entire estate, after the payment of his debts, to his said widow and grandchild, to be kept together until the grandchild arrived at age or married, or until the death of his widow ; and, on the happening of either of said events, the estate was to be equally divided between said widow and grandchild; but in the event of the death of said grandchild before she married or arrived at the age of twenty-one years, the whole estate should belong to said widow.   So that, by the terms of said will, said Emeline S. took an estate in fee in and to an undivided half of the estate of said testator, and an estate in remainder in the other half, contingent on the death of said Sallie David Chambliss before she married or arrived at the age of twenty-one years."   On or about 11th November, 1861, the said widow intermarried with Robert S. Wilson, in the said county of Montgomery, and they continued to live together as husband and wife until the death of the said Robert S., in said county, on or about 29th November, 1865.   Shortly before their marriage, and in contemplation and consideration thereof, the said Emeline S. Chambliss and Robert S. Wilson entered into an antenuptial contract, in writing, a copy of which is exhibited with the bill.   By this contract it was agreed, among other things, " that in the event that the said Emeline S. shall become entitled to the undivided half of said estate of David Chambliss now owned by said Sallie D. Chambliss, the same shall enure and belong to said Robert S. Wilson, and thereafter said Robert S. Wilson and said Emeline S. shall hold and own the estate · jointly and equally ; and, in consideration thereof, said Robert S. Wilson agrees that, in the event of his death, the said Sallie D. Chambliss surviving him, she shall share in his estate as a full heir at law."   The execution of this instrument is not attested by a subscribing witness.   In May, 1862, at the age of four years, the said Sallie D. departed this life ; and after her death, the said Robert and his wife " held and owned all of the property which had been of the estate of said David Chambliss, as joint property, in which they were equally and jointly interested," including said plantation, which " constituted and was the homestead of, said David Chambliss at and before his death ; of the said Emeline S. after his death and up to the time of her marriage with Robert S. Wilson ; and continued to be the homestead and residence of said Robert S. and Emeline S. Wilson after their marriage, until the death of said Robert S. Wilson ; and after his death remained in possession of said Emeline S. until her death as hereinafter stated."   Shortly after the death of Robert S. Wilson, said Emeline S. was appointed by the probate court of said county, and duly qualified as administratrix of his estate,

[Holt v. Wilson.]

and, as such administratrix, "she became and was entitled to the possession and control of the papers belonging to his estate, and, amongst other papers, to the original or duplicate original antenuptial contract aforesaid between herself and said Robert S. Wilson." On or about 20th January, 1866, after acting as administratrix only for a short time, she resigned, and soon thereafter made a final settlement with one Waller, who had been appointed administrator *de bonis non*, "and turned over to him certain papers belonging to the estate of said Robert S. Wilson ; but did not turn over or deliver to said Waller said original or duplicate original antenuptial contract between herself and said Robert S. Wilson ; but, as orator is informed and believes, and so avers, she destroyed the same." It is then averred that she "concealed and withheld from said Waller the said instrument in writing, and destroyed the same, intending thereby to defraud the heirs at law of said Robert S. Wilson." In 1870, said Waller made a final settlement of his administration, and was discharged, and since that time, there has been no administration upon the estate of said Wilson.

In 1868, the said Emeline S. intermarried in said county with one Campbell, and lived with him as his wife until on or about 13th May, 1873, when she departed this life, leaving a last will and testament, which was duly admitted to probate in and by the probate court of said county. Under the decree of said court, and for distribution among the devisees and legatees under the will of the said Emeline S., portions of the lands embraced in said plantation were sold by one Noble, as administrator of the estate of the said Emeline S., on 8th January, 1877 ; and other portions thereof were sold under the same decree, and for the same purpose, on 3d March, 1879. At both sales the defendant Holt became the purchaser of several portions or lots of said lands, complied with the terms of the sales, went into possession, and ever since has continued in possession, receiving the rents, issues and profits. At the last sale, the defendants J. C. and G. H. Gibson became the purchasers of a part of said lands, and entered into possession of the lands so purchased by them, and continued therein until on or about 4th May, 1879, when they sold and conveyed the same to the defendant Sharp, who has ever since held possession thereof, and received the rents, issues and profits thereof.

Robert S. Wilson had no children born of his marriage with the said Emeline S., but he left him surviving two children by a former marriage, the complainant and a daughter, both of whom, at the death of their father, were infants of tender years, residing in the State of Georgia. Afterwards, and while still a minor, the complainant's sister departed this life, unmarried, intestate, and without debts, leaving him her only heir at

[Holt v. Wilson.]

law and next of kin ; and on her estate no administration has ever been granted. The complainant " continued to reside in the State of Georgia until recently, to-wit, November, 1882, when he came to Alabama, and then, for the first time, heard of the existence of said antenuptial contract, and of its destruction, and until within a short time since, to-wit, within the twelve months last past, your orator had no knowledge or information of the existence of said antenuptial contract." By the amendment to the bill, this averment, among others, is added : "And orator avers that he had no knowledge or information of the existence, concealment or destruction of said antenuptial contract, until after the 29th January, 1882, and less than twelve months before the filing of this bill ; and, in fact, never heard of the same until on or about 1st November, 1882 ;" and that his said sister never had any knowledge or information on the subject, and never heard of the existence of said antenuptial contract. It is also averred that, at the time of the death of the said Robert S. Wilson, complainant was about thirteen years of age, and his sister was about sixteen years of age ; that shortly after the death of the said Robert S., in 1866, a gentleman of high character, residing in the city of Mongomery, a friend of the said Robert S., and whose name is given, wrote to complainant's sister, informing her that the estate of her father was insolvent ; and that they obtained the same information from other sources, and were thus led to believe, and did believe, that they had no interest in his estate worth looking after ; "and, in September, 1882, orator first discovered evidence, and obtained the knowledge of the existence of said antenuptial contract."

It is further averred that "said Emeline S. was lawfully in possession of all of said lands at and upon the death of said Robert S. Wilson, seized in fee to her own use of an undivided one-half thereof, and her subsequent possession of said land up to the time of her death was not adverse to the heirs of said Robert S. Wilson, nor to their equitable rights to an undivided one-half thereof, to which they became entitled by inheritance from their father as aforesaid, upon his death ; and orator is informed, and so avers, that none of said parties who have held possession of said land, or any part thereof, since the death of said Emeline S. have held the same adversely to the heirs of said Robert S. Wilson. On the contrary, orator avers that said Noble, as administrator, undertook to sell, and did sell only the interest of said Emeline S. in said lands ;" that the defendants, before acquiring an interest in said lands, had knowledge or information of the existence of said marriage contract, and of complainant's rights thereunder ; that the knowledge or information of this fact by them and others in attendance on said

[Holt v. Wilson.]

sale, caused the lands to bring about half their actual value; and that said defendants are not *bona fide* purchasers. It is then averred, in the alternative, that Sharp purchased from the Gibsons at a large advance, and that, if complainant is mistaken as to his knowledge or information touching said antenuptial contract, etc., "said J. C. and G. H. Gibson hold the money received by them from said Sharp for said lands, to-wit, $3,500 in trust for orator, to the extent of one-half thereof, and subject, in all respects, to the rights and equities of orator, to which said lands were subject in their hands as aforesaid."

The prayer of the bill is, that complainant be decreed to be entitled in equity to an undivided half of all of said lands, and of the rents, issues and profits therein, which have been received by said defendants; that an account of such rents, issues and profits be taken, and the amount decreed to be paid to the complainant; that the defendants, Holt and Sharp, be required to let the complainant into the possession of the said lands severally held by them, as tenants in common with them, and they be perpetually enjoined from asserting any title at law against complainant's right to an undivided half of said lands; that said lands be partitioned; and for general relief.

To the bill as amended, the defendants separately demurred on the grounds, in substance, (1) that the bill is multifarious; (2) that the complainant has an adequate remedy at law; (3) that the bill shows that the complainant's demand is stale; and (4) that it is shown by the averments of the bill that said demand is barred by the statute of limitations of ten years. The cause was submitted on the demurrer, and on a motion to dismiss for want of equity; and on the hearing the chancellor caused a decree to be entered, overruling both the demurrer and motion; and that decree is here assigned as error.

SAYRE & GRAVES and RICE & WILEY, for appellants.

TROY & TOMPKINS, *contra*.

SOMERVILLE, J.—It is very clear that, under the state of facts alleged in the bill, and admitted to be true by the demurrer, the interest which R. S. Wilson, the father of complainant, acquired in the lands in controversy before his death, was a purely *equitable* title. These lands were originally the property of David Chambliss, and by his last will and testament, bearing date January 23, 1860, were demised to his widow, Emeline S. Chambliss, and their infant granddaughter, Sallie David Chambliss, share and share alike. It was provided, however, that the share of the grandchild, in the event of her death before marriage or attaining majority, should also belong

[Holt v. Wilson.]

to the widow, a contingency which happened, thus vesting the legal title of the entire property in the widow. It was expressly declared in the articles of marriage settlement, executed ante-nuptially between Mrs. Chambliss and Wilson, on November 11th, 1861, that upon the happening of this event, the contingent remainder created by the grandchild's death should *"enure and belong to* said Robert S. Wilson, and thereafter said Robert S. Wilson and said Emiline S. shall *hold and own the estate jointly and equally."*

This was a clear declaration of trust on the part of Mrs. Chambliss, made while she was *sui juris,* by which she agreed, in effect, to stand seized of the legal title to the use of her intended husband. This was an *express trust,* and became operative upon the death of the grandchild, in May, 1862, it being entirely immaterial that the declaration of trust was made before the legal title was vested in the trustees.—Laws of Real Prop. (Boone) § 161; *Morse v. Morse,* 85 N. Y 53; *Creswell v. Jones,* 68 Ala. 420; 1 Perry on Trusts, §§ 151, 158.

It is insisted that, this trust having been created in May, 1862, and the present bill not having been filed before January, 1883, there arises a presumption of its settlement by reason of the lapse of twenty years from the date of its accrual, upon the well settled doctrine analogous to prescription. The bill, how-ever, alleges facts which must be construed to be a recognition of this trust as a continuing, subsisting and undischarged trust, at least until the twentieth day of January, 1866, when Mrs. Chambliss is shown to have resigned the administration of her husband's estate and repudiated the trust by the destruction of the articles of marriage settlement.—*Garrett v. Garrett,* 69 Ala. 429; *Harrison v. Heflin,* 54 Ala. 552; *McArthur v. Carrie's* Admr. 32 Ala. 75. From the date of the marriage, in 1861, up to the death of the husband, in November, 1865, the averment of the bill is that the husband and wife "held and owned" the property in controversy as "joint property in which they were equally and jointly interested," and that dur-ing the entire period it constituted their "homestead and *residence."* This was a sufficient averment of actual occu-pancy or possession by the parties, as tenants in common of the property. The husband having entered under the provisions of the marriage contract, his possession must in equity be referable to it, and the continuance of such possession must be regarded as evidence of a recognition of the existing trust as continuing and undischarged. This, as we have said, is a full answer to any argument of presumption based on the lapse of twenty years, this period of time not commencing to run until January 20th, 1866.

Nor are we able to perceive that there is any more merit in

the defense of the statute of limitations of ten years. There are two good reasons which, in our opinion, sufficiently justify this conclusion. The statute of limitations, in the first place, does not apply to express trusts, which are peculiarly and exclusively the subjects of equity jurisdiction, like the one under consideration, the possession of the trustee being considered as the possession of the beneficiary, and not becoming adverse until there has been an *open* disavowal of the trust, brought home to the knowledge of the beneficiary with unquestionable certainty.—*McCarthy v. McCarthy*, 74 Ala. 546 ; 2 Brick. Dig. p. 217, § 10 ; Angell on Lim. § 468. It can not be maintained that an adverse possession could originate in favor of Mrs. Wilson alone, by reason of her clandestine and fraudulent destruction of her husband's muniment of title, the marriage contract ; for this would be lacking an essential element of every adverse possession, which is openness and notoriety.

A like rule prevails in the case of cotenants, or tenants in common. Not every exercise of an act of ownership amounts to a disseizin by one as against the other. The possession of one tenant in common is, in general, regarded as the possession of all, and no possession, unaccompanied by some outward and unequivocal act amounting to an ouster, will be construed into an adverse possession. An essential element of such possession is "a *notorious* claim of exclusive right."—Angell on Lim. § 429 ; *Abercrombie v. Baldwin*, 15 Ala. 363 ; Law Real Prop. (Boone) § 359.

The bill negatives every inference of an adverse possession of the land, certainly until the sales made by Noble as administrator of Mrs. Campbell's (formerly Mrs. Wilson's) estate in the year 1877, under which the several defendants are alleged to claim title.

We can not assent to the view urged by appellants' counsel that, under the facts of this case, the relation of tenants in common could not exist between husband and wife, but that they held the land in entirety with right of survivorship. It is true that at common law, where a deed was made directly to husband and wife during coverture, they did not take by moieties, as ordinary tenants in common do, but by entireties with the right of survivorship.—*Baker v. Prewitt*, 64 Ala. 551; *Den v. Hardenbergh*, 18 Amer. Dec. 371. The reason of this rule was the legal unity of the husband and wife, a conveyance to both jointly being regarded, in legal contemplation, as a conveyance to but one person.—2 Kent, 132. This rule, however, had no application to a case where a conveyance was made to a man and a woman jointly, and they afterwards married. Having originally taken by moieties, they would continue to so hold after marriage.—4 Kent, 363 ; Coke's Litt. 187 (b). The

[Holt v. Wilson.]

wife, in the present case, owned an undivided half interest in the lands before her marriage with the decedent Wilson, and his right to the other half was created by an antenuptial contract—the same instrument by which a separate equitable estate was created in the wife. The effect of this contract, in our opinion, was to take the case out of the influence of the common law rule, upon the ground that the right of the parties originated before marriage, although the actual title of the husband vested afterwards, pursuant to the terms of the antenuptial agreement.

The same conclusion could possibly be reached in view of the policy of our present legislation, which has not only abolished all right of survivorship between joint tenants, but has abrogated the ancient rules of the common law which made the wife the mere legal shadow of her husband, by recognizing her distinct individuality in the privilege accorded her to hold and own property of all kinds in her own personal right. This principle was held by this court, in *Walthall v. Goree*, 36 Ala. 728, to prevail where the joint deed to husband and wife created a *statutory* separate estate in the wife to the extent of her undivided moiety. Whether an *equitable* separate estate would not come within the same rule we need not decide.—Code, 1876, § 2191 ; Law Real Prop. (Boone) § 366, notes 12 and 13 ; Walker's Amer. L. (5th Ed.) 309–310 ; *Wilson v. Fleming*, 13 Ohio, 68.

The facts of the case, moreover, show a fraudulent concealment of the cause of action, and the aggrieved party had twelve months under the statute, within which to sue after the discovery of the facts constituting the fraud.—*Porter v. Smith*, 65 Ala., 169 ; Code, 1876, § 3242. Mere silence or passiveness, it is true, does not ordinarily, and in the absence of some trust relationship, constitute such fraud as to excuse the ignorance of the complaining party.— *Underhill v. Mobile, etc., Ins. Co.*, 67 Ala. 45. Nor does fraud, strictly speaking, consist in the destruction of the evidence of a cause of action. But the fact of such destruction is a potent circumstance in proof of a fraudulent concealment of such cause of action, which is the essence of the alleged fraud, on the ground of which relief is sought. When this is coupled with the existence of a fiduciary relation between the parties, rendering disclosure both the moral and legal duty of the trustee, a court of conscience can scarcely preserve its self-respect and at the same time hesitate for one moment to grant relief.—*McCarthy v. McCarthy, supra.* The contract of marriage settlement was not recorded, and no one is shown to have had knowledge of its existence except the husband and wife, at least before the time of its destruction by the latter. It is alleged to have been

[Holt v. Wilson.]

executed in duplicate original. When Mrs. Wilson adminis-
tered on the estate of her husband, it was her duty to disclose
to the complainant and other beneficiaries the true status of the
estate, and the existence of this marriage settlement, which
was the evidence of a valuable property-right belonging to the
estate. When she resigned her trust, this paper should have
been handed over to her successor in the administration. The
refusal on her part to do this, accompanied with the destruc-
tion of the document, was the strongest evidence of a fraudu-
lent concealment of the present cause of action. There is full
scope for a plain application of the maxim, *Omnia presumun-
tur contra spoliatorem.*

We think the averments of the bill sufficiently negative any
*laches* on the part of the complainant, which might otherwise
be inferred by reason of his delay in seeking relief. He was
a mere infant of tender years at the time of his father's death,
being only about thirteen years of age, and his sister was but a
few years older. The two children did not reside in their
father's family or household, but in another State. Informa-
tion, which seems to have been trustworthy, was conveyed to
them that the estate was insolvent, and that there was no dis-
tributive share coming to them. This information seems to
have been obtained either during the period of Mrs. Wilson's
administration, or a short time after her resignation, and must
have been superinduced by her own fraud in failing to disclose
the existence of her husband's interest in the lands owned
jointly between them. This naturally deadened the activity
of further inquiry on the part of complainant, and removed
every implication of a want of proper diligence. Under these
circumstances, especially in view of the complainant's *non-
residence*, the time and manner of his discovery of the alleged
fraud were stated, in our opinion, with sufficient certainty.
The date of obtaining the information is stated to have been in
November, 1882, and the manner and occasion of its ascertain-
ment, a visit to Alabama, thus affording the first and only op-
portunity to this end which seems to have been enjoyed. The
person from whom the intelligence was acquired is rather a
matter of evidence than of allegation under this peculiar state
of facts. The averments of the bill acquit the complainant of
any negligence imputed by his failure to make an earlier visit
to this State, and the information acquired seems to have been
a mere accident of the visit.—*James v. James,* 55 Ala. 525;
*McCarthy v. McCarthy, supra.*

The bill is not subject to the objection of multifariousness
on account of the improper misjoinder of parties defendant.
It can not be said that any one of those parties is brought in as
" a defendant on a record, with a large portion of which, and in

the case made by which, he *has no connection whatever.*" Story's Eq. Pl. § 530; *Kennedy v. Kennedy*, 2 Ala. 573; *Adams v. Jones*, 68 Ala. 117. "Where the object of the suit is single, it is no objection that the different defendants have separate interests in distinct and independent questions, provided they are all connected with, and arise out of the single object of the suit."—*Randle, Adm'r, v. Boyd*, 73 Ala. 282; *Fellows v. Fellows*, 15 Amer. Dec. 428-29, *note ; Larkins v. Biddle*, 21 Ala. 252. The different titles of the several defendants all centre in one subject-matter of suit, and are subject to the same equity, created by the same instrument. Where these facts co-exist, the objection of multifariousness will not hold.—*Kingsbury v. Flowers*, 65 Ala. 479; *County of Dallas v. Timberlake*, 54 Ala. 403 ; *Johnston v. Smith's Adm'r*, 70 Ala. 108.

The other objections are, in our opinion, without merit, and the motion to dismiss the bill was properly overruled, as were also the several demurrers of the defendants.

Decree affirmed.