159 So.2d 844

Sarah W. BOWDEN et al.

v.

Hortense TEAGUE et al.

I Div. 874.

Supreme Court of Alabama.

Sept. 26, 1963.

Rehearing Denied Jan. 30, 1964.

Edwin C. Page, Jr., Evergreen, John M. Coxwell, Monroeville, Wilters & Brantley, Bay Minette, and Frank G. Horne, Atmore, for appellees.

GOODWYN, Justice.

Appeal by respondents (cross-complainants) from a final decree of the equity court granting complainants (cross-respondents) an undivided interest in land claimed by respondents, and ordering that such land be sold for division of the proceeds among the parties.

The facts and theories relied on by the parties, including complex initial pleadings with numerous amendments, are the ingredients of a confusing and frustrating melange of double-edged legalistic obstacles. It has taken us no little while to get extricated from this complicated mixture.

Our conclusion is that the appeal can and properly should be resolved by considering only one facet of the case, that is, whether an agreement (assuming its execution) relied on by appellees, created a trust in the land in appellees' favor, as held by the trial court. We hold that a trust was not created, thereby making it unnecessary to discuss any of the other questions argued. There is no dispute that, unless the agreement created a trust in favor of appellees, they have no interest in the land.

The agreement is set out in full in Bowden v. Teague, 266 Ala. 30, 32–33, 93 So.2d 408, where a decree overruling appellants' demurrer to appellees' bill was reversed.

Essentially, the facts are these: The land was deeded in 1867 by Martha English to Sarah Dean Bowden, the wife of Lemuel Bowden. Sarah and Lemuel had no children by their marriage but Lemuel had several by a prior marriage. On June 8, 1887, Sarah and Lemuel deeded the land to W. S. Bowden, one of Lemuel's children, with the reservation of a life estate to Sarah. (Although having no significant bearing on the question presented, we note, as background information, that this deed was not recorded until April 5, 1950, after the filing of the present suit on September 30, 1949;

Barnett, Bugg & Lee and N. S. Hare, Monroeville, and Walter B. Venters, Opelika, for appellants.

that on November 24, 1909, W. S. Bowden conveyed the land to Lizzie Bowden, his wife, and that this deed was not recorded until April 5, 1950; and that these conveyances apparently were not made known to Lemuel's other heirs until after the suit was filed, except by the following provision in Lemuel's will, dated June 8, 1887, and admitted to probate on July 8, 1889, viz.: "To my son, W. S. Bowden, I have given the land to which he has a deed of gift as his portion of all the property I possess, the said deed being of even date with this indenture, and the same to be his property and to have control of the ——— after my death of my beloved wife, Sarah Bowden, the same being set apart for her support during her natural life.")

Sarah Dean Bowden died in 1909. At that time, W. S. and Lizzie Bowden were in possession of the property.

After Sarah's death, W. S. and Lizzie Bowden, Casinda Lambert, a sister of W. S. Bowden, and three of his nephews, E. A., D. R. and R. C. Wiggins, discussed the status of the title to the property. Apparently, there was concern that Sarah's heirs might make claim to the property. On March 12, 1910, these parties entered into the "agreement", on which appellees rely.

After execution of the agreement, W. S. Bowden, together with his wife, Lizzie, continued in possession of the property until his death in 1929. Thereafter, Lizzie, who died in 1938, and his children continued in possession.

In 1940, some of the appellees discussed with the heirs of W. S. Bowden the question of dividing the land among Lemuel Bowden's heirs. The heirs of W. S. Bowden refused to make any division, claiming they were the sole owners of the land. This suit was initiated some nine years later.

The position taken by appellees, in short, is that an express trust was created by the agreement of March 12, 1910, in their favor (standing in place of their ancestors who were parties to the agreement); that title to the land was acquired by the adverse possession of W. S. and Lizzie Bowden, pursuant to the agreement, for the benefit of and in trust for all parties to the agreement; and that appellees (standing in place of their ancestors who were parties to the agreement), by virtue of the agreement coupled with W. S. and Lizzie Bowden's acquisition of title by adverse possession, have acquired a perfect equity in the land.

We do not understand appellees to insist that their claimed interest in the land is derived from the deeds held by W. S. and Lizzie Bowden; nor that some monetary or other valuable consideration actually passed at the time the "agreement" was executed; nor that appellants or their ancestors ratified or confirmed the "agreement" or in any way created a trust in the land in favor of appellees or their ancestors, after title to the land was acquired by adverse possession.

Appellees contend that a sufficient consideration was given by their ancestors to support the "agreement" because they had a bona fide claim to the land based on a colorable right, and the settlement of such claim by entering into the "agreement" was sufficient consideration to support it. We cannot subscribe to this for the reason (aside from any other) that appellees' ancestors had no bona fide claim to the land based on a colorable right. The title to the land (assuming the non-existence of the deed from Sarah and Lemuel Bowden to W. S. Bowden) was in Sarah Bowden at the time of her death in 1909 and in her heirs when the "agreement" was entered into in 1910. Thus, only Sarah's heirs had any interest in or claim to the land when the "agreement" was executed

Whether disposition of the appeal could be made on the basis that appellees (complainants below) came into court with unclean hands or that enforcement of the "agreement" would be against public policy, there is no need to decide.

■ One who has a bare expectancy or hope of acquiring property in the future, with no present interest therein, cannot create a present trust in such property.

1 Restatement of Trusts 2d, §§ 74–86, pp. 191–210; 1 Scott on Trusts, § 86, pp. 648–649; 1 Bogert, Trusts and Trustees, § 112, pp. 507–512; 54 Am.Jur., Trusts, § 32, p. 44.

The principle is stated in 1 Restatement of Trusts 2d, § 86, as follows:

"§ 86. Expectancies

"An expectation or hope of receiving property in the future cannot be held in trust.

"Comment:

\* \* \* \* \* \*

"*c. Where property is subsequently acquired.* If a person promises to declare himself trustee of property which he hopes to acquire in the future or to transfer such property to another in trust, or if he purports to declare himself presently trustee of such property or to transfer such property to another in trust, no trust arises even when he acquires the property in the absence of a manifestation of intention at that time. \* \* \*"

From 1 Scott on Trusts, § 86, is the following:

"§ 86. After-acquired property. It is obvious that a person cannot create a trust of property in which he has no interest. The mere fact that he hopes and expects to acquire the property in the future does not give him any interest of which he can be trustee, or of which he can make another trustee, before he acquires it. Where he purports to create a present trust of property which he does not own but which he expects thereafter to acquire, no trust is presently created. This is true whether he purports to make a transfer in trust or to declare himself trustee."

The rule is stated in 54 Am.Jur., Trusts, § 32, p. 44, as follows:

"§ 32. Trust Res.—A trust res consisting of property, actually in existence, in which the trustor has a transferable interest of title is necessary to the creation of a trust, although it may, as a rule, be any kind of transferable property, either realty or personalty, including undivided, future, or contingent interest therein. But a trust res cannot be a mere expectancy without right or interest, \* \* \*."

We are not dealing here with a contingent interest in property, such as a contingent remainder, as was involved in Holt v. Wilson, 75 Ala. 58, on which appellees place heavy reliance.

From 1 Bogert, Trusts and Trustees, § 113, p. 514, is the following:

"So long as the interest in question is an existing, alienable interest, its other characteristics are not apt to be important when the question of judging its availability as a trust res is to be considered. Thus, there may be a trust of a contingent interest, as in the case of a contingent remainder, or a trust in a vested but defeasible interest."

In 1 Scott on Trusts, § 85, it is said:

"The fact that an interest is contingent on the happening of some future event does not prevent its being the subject of a trust. If the interest is transferable, the owner of the interest can transfer it to another as trustee, or he can declare himself trustee of it. Such an interest is more than a mere expectancy, which is not a property interest and which cannot be the subject of a trust. \* \* \*

" \* \* \* The expectancy of the heir apparent of a living person, or that of a person named as legatee under the will of a living person, is not a property interest; but an interest created by the will of a person who has died is a property interest even though it is contingent."

Appellees, in their brief, make it clear that they win or lose "under the law ex-

pressed" in Holt v. Wilson, 75 Ala. 58, supra. In that case, one Chambliss, by his will, left valuable land to his wife and granddaughter, share and share alike. The will provided that in event of the granddaughter's death before reaching her majority, her one-half interest should also belong to the testator's widow. The grandchild died before marrying or reaching her majority and the full title thereupon vested in the widow. The widow, prior to the grandchild's death, made plans to marry one Wilson and entered into an ante-nuptial marriage settlement or contract wherein it was provided that, upon the happening of such an event, the contingent remainder created by the grandchild's death, should "enure and belong to the said Robert S. Wilson, and thereafter said Robert S. Wilson and the said Emiline S. [Mrs. Chambliss] shall hold and own the estate jointly and equally." The court held as follows:

"This was a clear declaration of trust on the part of Mrs. Chambliss, made while she was *sui juris,* by which she agreed, in effect, to stand seized of the legal title to the use of her intended husband. This was an *express trust,* and became operative upon the death of the grandchild, in May, 1862, it being entirely immaterial that the declaration of trust was made before the legal title was vested in the trustees. * * *"

This holding finds support in the authorities, as already noted, but it is not applicable to the situation in the case before us.

 There can be no doubt that the settlor in the Holt case (Mrs. Chambliss) had such an "interest" in the part of the land willed to her granddaughter as to permit the creation by her of a trust with respect thereto. (The opinion states she had a "contingent remainder" in the grandchild's part. Whether such interest be called a "contingent remainder" or an "executory devise" [see Code 1940, Tit. 47, § 137] is immaterial. Such interest, by whichever name called, is sufficient to permit it to be the subject matter of a trust.

In Badham v. Johnston, 239 Ala. 48, 51–52, 193 So. 420, it was held that an executory devisee under a testamentary trust, whose contingent interest did not rise to the dignity of an estate, had such an interest in the property as to authorize such devisee to invoke equity jurisdiction where his interest is threatened by the trustee's maladministration.) In the Holt case, the settlor, as the holder of a "contingent remainder," had an interest in the land which was capable of being placed in trust, while, in the case before us, none of the parties to the "agreement" had even the slightest interest in the land when the "agreement" was executed. There was only a bare hope, expectancy, or possibility that the "trustee" could or would remain in possession long enough, and in such manner, as to "create" in the future an interest in the land by adverse possession.

It follows, from what we have said, that the decree appealed from is due to be reversed and the cause remanded.

Reversed and remanded.

LAWSON, MERRILL and HARWOOD, JJ., concur.