# Wilson *v.* Holt.

*Bill in Equity by Heir of Husband, claiming under Marriage Contract, to establish his interest in Wife's Lands, with Account of Rents, and for Partition.*

1.   *Ante-nuptial contract construed, as to interest acquired by husband in wife's lands.*—Under an ante-nuptial contract between a widow and her intended second husband, she owning an absolute fee in one half of the property devised by the will of her former husband, and a contingent remainder in the other half, dependent on the death of an only grandchild before marriage or attainment of majority; by which it is stipulated that, on the remainder becoming vested by the death of the grandchild during their coverture, "the same shall enure and belong to him [the husband], and thereafter they shall own the estate jointly and equally;" an equitable interest in the remainder is acquired by the husband, the wife being seized of the legal title for his use, and this interest descends to his heir at law, on his death after the remainder has become vested.

2.   *Proof of marriage-contract lost or destroyed.*—The contents of an ante-nuptial contract executed more than twenty years ago, and alleged to have been destroyed by the wife after the death of the husband, *held* to be established with sufficient certainty and precision by the testimony of an attorney, who wrote a marriage-contract for the husband a few days before the celebration of the marriage, and who states special circumstances calculated to impress the facts on his memory; corroborated by proof of execution by the subscribing witness, subsequent admissions by the wife, during the coverture and afterwards, as to the interest thereby vested in the husband, and her repeated declarations to her slaves, who were included in the contract, as detailed by them twenty years afterwards, in strict harmony with the other facts proved.

3   *Sale of decedent's lands under probate decree, for payment of debts or for distribution; jurisdiction of court, and averments of petition.*—The Probate Court has no jurisdiction to grant an order for the sale of a decedent's lands, on the application of an executor or administrator, either for the payment of debts or for distribution, when the will confers a power of sale on the executor, which passes to the administrator with the will annexed (Code, §§ 2218, 2447, 2449; Rev. Code, §§ 1609, 2079, 2221); and when the petition shows that there is a will, it must affirmatively appear that no power to sell is conferred by it.

4.   *Title of purchaser at sale under probate decree.*—A purchaser of lands at a sale under a probate decree, founded on a petition by an executor or administrator which does not contain the averments necessary to give the court jurisdiction, acquires no legal title, and can convey none to a sub-purchaser; but he may acquire an equity enforceable against the heirs, if they receive their share of the purchase-money paid.

5.   *Same; protection against secret equities.*—Protection against prior equities, as in favor of a purchaser for value without notice, is only ex-

[Wilson v. Holt.]

tended to a purchaser of the legal title; but it may be doubted whether the doctrine of *caveat emptor*, as applied to judicial rules, does more than cover those defects which may be discovered by an examination of the chain of title, or, at least, whether it covers such secret equities as ordinary diligence can not discover.

6. *Laches, and diligence.*—*Held*, on the facts shown by the record, that the complainant was not guilty of any *laches*, or want of diligence in the discovery and prosecution of his rights in this case, under an ante-nuptial contract executed more than twenty years before the bill was filed, which had been lost or destroyed, never having been recorded, and of which he had never heard until within twelve months before the filing of his bill; that the proof was even stronger than the allegations of the bill, but consistent with them.

7. *Constructive notice by record.*—Whether an infant of tender years is chargeable with notice of a fact, because it is alleged in a bill to which he is made a party, his guardian *ad litem* being required to deny its allegations, "may be questioned;" but, if a cross-bill is filed in the suit, to which he is not made a party, and which is afterwards dismissed without prejudice, and without any litigation on its merits, he certainly is not chargeable with notice of a fact therein alleged, or of a written instrument therein referred to.

8. *Presumption arising from lapse of time; legislative ratification of decree for divorce.*—A decree in chancery granting a divorce to the husband, rendered in February, 1861, being collaterally assailed in a suit instituted in 1883, because it was not shown to have been ratified and confirmed by legislative act, as then required by constitutional provision; *held*, that legislative ratification would be presumed after such lapse of time, in connection with proof that the husband married again, and lived with his second wife in the marital relation until his death.

9. *Same; notice of judicial proceedings.*—It will be presumed after the lapse of twenty years, in favor of the validity of judicial proceedings, that the parties concerned had due notice, although the record does not affirmatively show that fact.

10. *Foreign decree of divorce; statutory inhibition of second marriage.*—A decree of divorce being rendered against the husband in Georgia, where the law prohibited the subsequent marriage of a person against whom such a decree was rendered, he may nevertheless contract another marriage in Alabama, especially when there relieved by legislative act of all the penalties and disabilities imposed by the decree against him.

11. *Proof of identity.*—Identity of name is *prima facie* evidence of identity of person, and is sufficient proof of the fact in the absence of all evidence to the contrary.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 29th January, 1883, by Waldo P. Wilson, only surviving child and heir at law of Dr. Robert S. Wilson, deceased, against James L. Holt, R. W. Sharp, J. C. Gibson and G. H. Gibson; and sought, principally, to establish and enforce the complainant's right and title to an undivided half interest in a large tract of land near the city of Montgomery, which he claimed under the provisions of an alleged ante-nuptial contract between his father and Mrs. Emmeline S. Chambliss, then the widow of David Chambliss, deceased; also, for a partition of the lands,

34

or a sale for partition, and for an account of rents against the defendants, who were in possession of different portions of the land, claiming under purchases from the administrator with the will annexed of said Emmeline S.

The land in controversy belonged to said David Chambliss at the time of his death, in February, 1860. By the terms of his will, which was duly admitted to probate in Montgomery, and a copy of which was made an exhibit to the bill, said David Chambliss devised and bequeathed his entire property, real and personal, to his widow and only grandchild, Sallie David Chambliss, one half to each, and directed that it should be kept together " until the said Sallie David becomes of age or marries," when it was to be equally divided between them; with a further provision that, if the said Sallie David should die, "before she becomes of age or marries," then her half of the property was to belong to the widow, her grandmother. On the 11th November, 1861, Mrs. Emmeline Chambliss, the widow, married Dr. R. S. Wilson, the father of the complainant; and they lived together as husband and wife until his death, which occurred on or about the 29th November, 1865. At the time this marriage was contracted, Dr. Wilson had a former wife living in Georgia, but she had procured a divorce from him, by decree in chancery rendered in Liberty county in that State, in 1859; and he had also procured a divorce from her, by decree of the Chancery Court of Montgomery county, Alabama, on the 22d February, 1861. Dr. Wilson had two children by his former wife, a son and a daughter, who lived with their mother in Georgia. At the time of his death, the daughter was about sixteen years old, and the son about thirteen; and the daughter died a few years afterwards, while still in her minority, unmarried, and intestate, leaving the son sole heir of his father's estate. Sallie David, the grandchild of David Chambliss, died in May, 1862, then being only four or five years old. After the death of Dr. Wilson, letters of administration on his estate were granted to the widow, and, after her resignation, W. G. Waller was appointed administrator de bonis non, and made a final settlement of the estate. The widow afterwards married David Campbell, and died in May, 1873, having duly executed her last will and testament, which was admitted to probate in said county of Montgomery. Letters of administration on her estate, with the will annexed, were granted to B. F. Noble, who, in November, 1876, obtained an order to sell the lands for distribution, on the

ground that they could not be equitably divided without a sale. Sales were made under this order, one on the 8th January, 1877, and another on the 3d March, 1879, at which James L. Holt became the purchaser of a large part of the land, and J. C. and G. H. Gibson of another part, each of them going into possession under his purchase; and the Gibsons afterwards sold and conveyed to the defendant Sharp.

The bill alleged that an ante-nuptial contract in writing was executed by and between Dr. Wilson and Mrs. Chambliss, "a substantial copy of which" was made an exhibit to the bill. This instrument, as shown by the copy, was dated Nov. 11th, 1861, signed by both of the parties, but without an attesting witness, and contained the following provisions: "(1.) That all property of any kind and description, owned by the said Emmeline S. at the time of said marriage, shall be and remain her separate estate, free from all claim thereto by the said Robert S. Wilson or his heirs; and the said Emmeline S. shall have full power and authority to dispose of the same, by will or otherwise, as she may deem proper. (2.) In like manner, all property owned by the said Robert S. Wilson at the time of said marriage shall remain his individual property, free of any claim thereto by said Emmeline S. or her heirs. (3.) The property of said Emmeline S. which she now owns, and which is secured to her as aforesaid, consists of an undivided one-half interest in the estate of her former husband, David Chambliss, deceased, the other undivided half belonging to her grand daughter, Sallie David Chambliss, and to which the said Emmeline S. may become entitled in the event of the death of said Sallie David Chambliss. Now, it is further agreed, that in the event the said Emmeline S. shall become entitled to the undivided half of said estate now owned by said Sallie D. Chambliss, the same shall enure and belong to said Robert S. Wilson, and thereafter said Robert S. Wilson and said Emmeline S. shall hold and own the estate jointly and equally; and in consideration thereof, said Robert S. Wilson agrees that, in the event of his death, the said Sallie D. Chambliss surviving him, she shall share in his estate as a full heir at law." The bill alleged that, when the widow became administratrix of the estate of Dr. Wilson, she acquired possession of all his papers, "and amongst them the original or duplicate original of said ante-nuptial contract;" that she never delivered this paper to her successor in the administration, but destroyed the same; that the complainant

came to Alabama in November, 1882, and then first heard of the said marriage-contract and of its destruction; that the several purchasers of the land at the administrator's sale had knowledge or information of said contract, and that the land only brought about one-half of its market value in consequence of that fact.

The defendants filed a demurrer to the bill, assigning several specific grounds of demurrer, and also moved to dismiss it for want of equity; but their demurrer and motion were overruled by the chancellor, and his decree was affirmed by this court on appeal.—*Holt v. Wilson*, 75 Ala. 58-68. They afterwards filed answers, denying the execution and validity of the alleged marriage-contract, and requiring proof thereof; denying also the validity of the marriage between Dr. Wilson and Mrs. Chambliss, on the ground that he then had a wife living in Georgia; and claiming to be entitled to protection as *bona fide* purchasers for value without notice. On final hearing, on pleadings and proof, the chancellor dismissed the bill; holding that the evidence was not sufficient to establish the execution and contents of the alleged marriage-contract, and that, if established, it only created an equity against which the defendants were entitled to protection. The chancellor's decree is now assigned as error by the complainant.

TROY, TOMPKINS & LONDON, and WATTS & SON, for the appellant.—(1.) The equity of the bill in this case, the validity and construction of the marriage-contract, and other material questions, were decided in favor of the complainant on the former appeal.—*Holt v. Wilson*, 75 Ala. 58. The questions now presented are, whether the execution and contents of the contract are proved as alleged, and whether any of the defenses set up against it is established. (2.) The writing of an ante-nuptial contract for the parties, and its contents substantially as alleged, are proved by the attorney who wrote it, and who states circumstances which, aside from the peculiar features of the case, were calculated to impress the facts on his memory. The execution of a marriage-contract between the parties, on the day of the marriage, is proved by one of the subscribing witnesses, whose testimony is unimpeached, and who also testifies to the death of the other subscribing witness, his wife; and the subsequent declarations of the parties, and their conduct, in recognition of the contract, are established by a number of concurring wit-

[Wilson v. Holt.]

nesses. The proof is as full as could be expected, after the lapse of so many years. (3.) The defendants can not claim protection against this contract, as *bona fide* purchasers for value without notice; since they only acquired the interest which the administrator could and did sell—that is, the undivided one-half interest which belonged to his testatrix. *Derrick v. Brown*, 66 Ala. 162; *Smith v. Br. Bank*, 21 Ala. 125; *Walker v. Miller*, 11 Ala. 1067; *Oliver v. Piatt*, 3 How. U. S. 333; *Perkins v. Winter*, 7 Ala. 855; *Fore v. McKenzie*, 58 Ala. 115; *Prince v. Prince*, 67 Ala. 565: *Walden v. Gridley*, 36 Ill. 728; *Bingham v. Maxey*, 15 Ill. 295; *Burns v. Hamilton*, 33 Ala. 210; Rorer Jud. Sales, §§ 267, 528, 447, 174, 150, 477. Sharp, who bought from the Gibsons, acquired no better title than they had.—*Thweatt v. Johnson*, 18 Ala. 741; *Wilson v. Wall*, 34 Ala. 288; *Witter v. Dudley*, 42 Ala. 616; *State v. Conner*, 69 Ala. 212. (4.) The administrator's sale, under which the defendants claim, was void, for want of jurisdiction in the court to make the order.—*Brock v. Frank*, 51 Ala. 85; *Hall v. Chapman*, 35 Ala. 553; *McCollum v. McCollum*, 33 Ala. 711; *Robertson v. Bradford*, 70 Ala. 385; *M. E. Church v. Price*, 42 Ala. 39; *Sloan v. Frothingham*, 65 Ala. 593; *Winston v. Jones*, 6 Ala. 550. If the purchasers at that sale acquired an equity, that would not entitle them to protection.—*Boone v. Chiles*, 10 Peters, 177. (5.) The validity of the marriage between Dr. Wilson and Mrs. Chambliss can not be impeached. After the lapse of twenty years, as here, every presumption will be indulged in favor of the validity of a marriage, where the parties have lived together until the death of one.—Bish. Mar. & D., §§ 15, 58–9, 457; *Matthews v. McDade*, 72 Ala. 377; *Carroll v. Carroll*, 20 Texas, 731; *McCarty v. McCarty*, 2 Strob. Law, 6; s. c., 47 Amer. Dec. 565; *Lopez v. Andrews*, 3 Man. & Ry. 329. Aside from this presumption, the Georgia divorce had no extra-territorial force, and Dr. Wilson was relieved from any disabilities thereby imposed on him by special legislative act.—*Reed v. Hudson*, 13 Ala. 570; *Fuller v. Fuller*, 40 Ala. 301.

SAYRE & GRAVES, RICE & WILEY, and WILLIAMSON & HOLTZCLAW, *contra*.—(1.) The evidence does not establish, with sufficient certainty, either the execution or the contents of the alleged marriage-contract.—*Shorter v. Sheppard*, 33 Ala. 648; *Bank of Mobile v. Meagher*, 33 Ala. 629; *Hawes v. Brown*, 75 Ala. 385; Pom. Equity, §§ 186, 409.

The deficiencies of the proof, as to these facts, should be considered in connection with the complainant's own declarations, admitted to be false, and made with intent to effect a compromise, that he had the original contract. To authorize relief in the nature of specific performance, the proof must be clear, certain, and definite.—*Goodlett v. Kelly*, 74 Ala. 213; *Lehman v. Lewis*, 62 Ala. 129; *Webb v. Webb*, 29 Ala. 588; *Daniel v. Collins*, 57 Ala. 625; *Gilmer v. Wallace*, 75 Ala. 220. (2.) If the contract was ever executed, the performance of it will not be enforced, because contrary to public policy, so far as Mrs. Chambliss undertook to transfer her contingent interest dependent on the death of her grandchild, in whose life Dr. Wilson had no insurable interest. May on Insurance, §§ 75, 395; *Doe v. Oliver*, 10 B. & C. 181; *Grayson v. Heaton*, 1 Bro. Ch. 1. (3.) If the contract was valid for any purpose, it only created a trust in favor of Dr. Wilson; and never having been recorded, it can not defeat the title of creditors or purchasers for a valuable consideration without notice.—Code, § 2200; *McMillan v. Preston*, 58 Ala. 84; 16 Wall. 361. (4.) The defendants are purchasers at a judicial sale, and are entitled to protection against equities of which they had no notice. No vigilance, no examination of the county records, would have put them on inquiry as to this secret contract.—*LeNeve v. LeNeve*, 2 L. C. Eq. 195, 3 Amer. ed.; *Bassett v. Nosworthy*, Ib., 69; *Wilson v. Wall*, 6 Wall. 83; *Ohio L. & F. Co. v. Ledyard*, 8 Ala. 873; Freeman, Judg., §§ 366, 509; *Marks v. Cowles*, 61 Ala. 305; *Thames v. Rembert*, 63 Ala. 511; 1 Story's Equity, § 436; *McMillan v. Preston*, 58 Ala. 84; *Bailey v. Timberlake*, 74 Ala. 221; *Scaife v. Stovall*, 67 Ala. 242; *Hanrick v. Thompson*, 9 Ala. 409. (5.) The sale by the administrator was not made for the payment of debts, and the order of sale was valid.—Rev. Code, § 2080; *Marks v. Tarver*, 59 Ala. 335; *Tarver v. Haines*, 55 Ala. 503. (6.) The marriage-contract was executed, if at all, in consideration of the marriage between Dr. Wilson and Mrs. Chambliss; and that marriage was void, because Dr. Wilson was then incapacitated to enter into a valid marriage.—Georgia Code of 1868, §§ 1764, 4122, 4124; Const. Ala., Art. VI, § 13. The legislative act "for the relief of Robert S. Wilson" can have no effect, because there is no proof of identity.—1 Greenl. Ev., § 493; *Desha v. Stewart*, 6 Ala. 852. (7.) If the complainant ever had any rights in the premises, they have been lost by his *laches*. He had notice

of the alleged contract, constructive at least, more than ten years before his bill was filed.

SOMERVILLE, J.—1. If the marriage-contract, alleged in the bill to have been executed ante-nuptially between Mrs. Chambliss and Dr. R. S. Wilson, on November 11th, 1861, be satisfactorily proved by the testimony, it created an equitable title in favor of said Wilson, to an undivided one-half of the land in controversy, which he subsequently held as a tenant in common with her, although she was his wife. This was decided on the last appeal of this cause.—*Holt v. Wilson*, 75 Ala. 58. The complainant shows that he, as the sole surviving heir, is entitled to this interest of his father, if any thing.

2. A strongly controverted issue is the existence of this alleged contract. That a marriage-contract of some kind was executed between the contracting parties, on the day of, and just before the marriage, seems to us to be very certain. This is proved by the witness Elliott, who was present at the ceremony of the wedding, and by request signed the contract as one of the attesting witnesses; his wife, now deceased, according to his best recollection, being the other witness. He was at the time in the employment of Mrs. Chambliss, supervising her plantation as overseer. It is quite natural that his presence should have been invoked for such a purpose. We see nothing to cast suspicion on his testimony, and there is much in the record, as we shall show, to corroborate the probability of its truth. A more difficult inquiry is as to the certainty of the contents of this agreement. It is proved that, just before this marriage, Dr. Wilson procured a marriage-contract to be drawn up by Col. Troy, then and now a practicing attorney at the Montgomery bar. The contents of this agreement are proved with great precision by Mr. Troy, and he gives reasons for his retentive recollection of its purport, which seem to us very satisfactory. The interest acquired by Dr. Wilson, under this contract, was a contingent remainder in an undivided one-half interest in the estate of David Chambliss, devised by him to his infant grand-daughter, with a remainder to Mrs. Chambliss, his widow, upon a contingency which has since happened. The will of the testator shows the exact nature and *quantum* of this interest thus bargained for. It was a fact to excite the attention of any intelligent lawyer, that the bargainee should acquire such a peculiar interest, in view of assuming towards

the infant the relation of a step-father. So striking is this feature of the contract, that it is made one of the grounds upon which to assail the validity of the transaction, in the argument of the present case. The only other term of the instrument prepared by Mr. Troy was one easy to be remembered—that in the event of the grand-daughter, Sallie David Chambliss, surviving Dr. Wilson, she should be entitled to share in his estate as one of his heirs. Another cogent fact is stated, which refreshes the witness as to the terms of this agreement. He had occasion, a few years after he had prepared it, to re-draft the substance of it, which he used in a certain cause then pending in the Chancery Court of Montgomery; and that paper was accessible to him, as another most satisfactory mode of strengthening his remembrance of the facts. The only serious question connected with this branch of the case is, whether the instrument prepared by Col. Troy, at the request of Dr. Wilson, was the one shown to have been executed in the presence of the witness Elliott.

Supposing that the parties intended to execute such a contract, it is not improbable that the aid of an expert would be invoked to prepare it; that the expected husband, not the wife, would see to its preparation, and that he would have incorporated in it what had already been agreed upon between the parties. There is an extreme absence of all suspicion that this portion of the *res gestæ* attending the transaction was not entirely *bona fide*, and free from the appearance of any unfair contrivance. It would seem, therefore, not to require the most cogent evidence that the instrument thus carefully prepared was the one actually signed. This evidence is furnished by the coincidence of the entire testimony from beginning to end, and especially by the repeated admissions of Mrs. Chambliss, which are clearly admissible as declarations against interest, if not explanatory of her possession of the property in controversy.—*Humes v. O'Bryan*, 74 Ala. 64. She is proved to have declared on sundry occasions, during the life of Dr. Wilson, that he had an interest in her estate, lands and slaves, and to have admitted, after his death, that his children would get a part of the property. The decided weight of the testimony is, that this was a half interest—the precise amount covered by the marriage-contract proved to have been prepared by Col. Troy. The credibility of the several witnesses who testify as to these admissions is assailed, as improbable and unworthy of belief, especially of the colored witnesses who were former slaves. It

[Wilson v. Holt.]

is said not to be credible, that they would remember for fifteen or twenty years declarations of this kind made by their former mistress. It must be remembered, however, that the marriage-contract in question conferred on Dr. Wilson an undivided interest in the slaves of Mrs. Chambliss, as well as in her lands. What is more natural or probable, than that the wife would inform her slaves as to their ownership—who their master was to whom they owed obedience? Even "the ox," we are told, "knoweth his owner." How much more should a reasonable being in lawful bondage, know and remember this fact? There is, to our minds, nothing improbable in the fact that these witnesses should remember with distinctness the announcements made to them by their mistress as to their change of ownership. It was a fact that was likely to deeply impress them, constantly to be meditated on, and not likely ever to be forgotten. We are much impressed with the air of truth which pervades the testimony of these former slaves, and its coincidence with not only intrinsic probability, but, we repeat, with all the facts of this case, from beginning to end.

3. The existence of this marriage-contract, as we have said, created an equity in the lands in controversy, in favor of Dr. Wilson, to the extent of an undivided one-half interest. This title has devolved by inheritance on the complainant, and makes a *prima facie* case of recovery for him in this suit. To overcome this, the defendants rely on a sale of the lands made by one Noble, as administrator *de bonis non*, with the will annexed, of the estate of Mrs. Chambliss, on January 8th, 1877, under an order of the Probate Court of Montgomery county. The validity of these proceedings becomes, therefore, of importance.

It is contended that the Probate Court obtained no jurisdiction of the case, and had no authority to sell the lands, because the petition made to that court showed that there was a will made by Mrs. Chambliss, and yet failed to show that no power of sale was given by the will. Is this a jurisdictional allegation in an application made to sell lands for distribution among devisees, the fact appearing in the petition that there is a will? It is admitted that such is the case, where the application is made by an executor or administrator with the will annexed, to sell lands for the payment of debts.—Rev. Code, 1867, § 2079. Whatever doubt there might be on the subject, were the question a new one, we regard the proposition as settled, that where the will confers a

power of sale, the Probate Court has no jurisdiction to order a sale of the lands for distribution among the heirs, any more than for the payment of debts. Such a power of sale, under the statute, passes to an administrator with the will annexed, who is required to execute it.—Rev. Code, § 1609. The will thus became a law to the court, and a limitation upon its jurisdiction. In *Brock's Adm'r v. Frank*, 51 Ala. 85, decided in 1874, we held this kind of power to be a limitation upon the jurisdiction of the Probate Court; in other words, that the fact in question was a jurisdictional one. "Such jurisdiction," it was there said, "can only arise when the testator dies intestate as to lands, or when no power of sale is given in the will, and a division among the devisees is necessary."—See, also, *Meadows v. Meadows*, 73 Ala. 356; *Ala. Con. M. E. Church v. Price*, 42 Ala. 49.

4. The jurisdiction of the Probate Court, in making such a sale, being purely statutory and limited, the facts showing the jurisdiction must be stated in the application asking the sale; and so far does this principle prevail, that nothing is presumed to be within the jurisdiction of a court of this character, except what is expressly alleged and affirmatively appears on the record.—*Robertson v. Bradford*, 70 Ala. 385, and cases cited. It follows from this principle, that when the petition shows the existence of a will, it should negative the conferring by it of a power to sell; for it is only in the contingency of the non-existence of such power, that the Probate Court has jurisdiction to sell.

The petition filed by Noble, under which the present lands were sold, was fatally defective in failing to contain this jurisdictional averment. The Probate Court, therefore, acquired no jurisdiction to sell, and the attempted sale made under the void order was itself void, conferring no legal title on the purchasers. If the purchasers at this sale got nothing more than an equity, they could transfer no better title than they had acquired, all sub-purchasers being charged with notice of the defect in the Probate Court proceedings, which was matter of public record. Sharpe, for this reason, occupied no better vantage-ground than the Gibsons; and they, at most, acquired only an equity against such of the distributees as received their share of the purchase-money.

5. The complainant was not one of these; and his equity, being first in point of time, would be first in right. It is only the purchaser of a legal title who can claim to be pro-

[Wilson v. Holt.]

tected as a *bona fide* purchaser for value without notice of prior equities.

It is unnecessary for us to decide the question, as to how far a *bona fide* purchaser for value of the legal title, acquired at a judicial sale made under an order of the Probate Court, will be protected against secret equities attaching to the title. It may be doubted in such cases, whether the rule of *caveat emptor*, which applies to judicial sales, will go further than to cover those defects which may be disclosed by an examination of the chain of title; or, at least, whether it would cover such secret equities as no ordinary diligence could discover.—Code, 1876, § 2200; *McMillan v. Preston*, 58 Ala. 84; *Banks v. Ammon*, 27 Penn. St. 172; *LeNeve v. LeNeve*, 2 Lead. Cas. Eq. (3d Amer. Ed.), p. 195; *Basset v. Nosworthy*, Ib. 69, 72; *Ohio L. & T. Co. v. Ledyard*, 8 Ala. 873; Freeman on Ex., § 336, 509; Rorer on Jud. Sales, § 462; *Whelan v. McCrary*, 64 Ala. 328; *Prince v. Prince*, 67 Ala. 565; *Fore v. McKenzie*, 58 Ala. 115; *Perkins v. Winter*, 7 Ala. 855; *Bailey v. Timberlake*, 74 Ala. 221, 225.

6. We find nothing in the record which imputes *laches* to the complainant in the commencement of this suit. The testimony shows a remarkable degree of diligence in the prosecution of his rights, and no negligence in the discovery of them. Nor is there any substantial want of correspondence in the allegations and proof on this point. We have held the allegations of the bill sufficient, and the proof is, if any thing, stronger than these allegations, on the question of diligence.—*Holt v. Wilson*, 75 Ala. 58.

7. It is sought, however, to charge the complainant with notice of the existence of the marriage-contract, by reason of a bill in chancery filed by Mrs. Wilson in February, 1866, to which the complainant was made a party defendant, his co-defendants being his sister Alice, now deceased, and the administrator of Dr. Wilson. Complainant was then a minor, about eleven years of age. He was represented in that suit by a *guardian ad litem*. His co-defendant set up the marriage-contract, in a cross-bill against Mrs. Wilson, which was, however, dismissed without prejudice. It may be questioned, whether a minor of such tender years can be charged with notice of a fact in this manner, by stating it in a bill, the allegations of which his guardian *ad litem* is compelled by law to deny. But the minor was never made a party to the cross-bill, and the issues growing out of the marriage-contract were never litigated in the suit with any one, by reason of the

dismissal of this cross-bill. On no sound principles, therefore, can it be held that complainant had such notice of this contract as to impute negligence to him for failing to know and pursue his legal rights secured to him under its provisions.

8. It is further argued that the marriage between Dr. Wilson and Mrs. Chambliss was illegal and void, on the ground that he was at the time already a married man, undivorced from a wife then living in Georgia. A full answer to this suggestion is the decree of divorce rendered in Wilson's favor, by the Chancery Court of Montgomery county, on February 22, 1861, the record of which is introduced in evidence, if that decree be sustained as valid. Its validity is assailed on the ground, that under the provisions of the Constitution of Alabama, then in force, no decree for divorce could have effect until sanctioned by two-thirds of both houses of the General Assembly; it being made by statute the duty of the register in chancery to make out and transmit the record of the suit to the speaker of the house of representatives.—Const. 1819, Art. 1V, § 13; Code 1852, § 1978. The evidence in this case showing no such legislative sanction, it is claimed that the divorce proceedings are for all purposes ineffectual. This conditional divorce was granted more than twenty years before the commencement of this suit. It is shown that the parties were married in due form, and lived together as husband and wife for many years, until the death of one of the parties. It will be presumed, therefore, in view of this great lapse of time, that the requisite sanction was given by the General Assembly to the decree of divorce granted by the Chancery Court. Almost any reasonable presumption of fact will be conclusively indulged, in order to sustain rights asserted under a decree which is twenty years old. And reasons of public policy especially favor the application of this principle to uphold the validity of marriages.—*Matthews v. McDade,* 72 Ala. 377; *Long v. Parmer,* 81 Ala. 384, 388, and cases cited; *Bozeman v. Bozeman,* 82 Ala. 389; 1 Bish. on Marriage & Divorce, § 13; *McCarty v. McCarty,* 2 Strob. Law, 6; s. c., 47 Amer. Dec. 565; *Carroll v. Carroll,* 20 Tex. 731; *Dickey v. Vann,* 81 Ala. 425.

9. In addition to this, the complainant relied upon the record of a divorce suit obtained against Dr. Wilson, by his first wife, in the State of Georgia, in the year 1859. Whatever force there might otherwise be in the objection that the

[Wilson v. Holt.]

record of the proceedings shows no service on the defendant, and other like objections, the presumption, after the lapse of twenty years, is in favor of every judicial tribunal acting within its jurisdiction, and that all parties concerned had due notice of its proceedings.—1 Greenl. Ev. (14th Ed.), § 19.

10. It is said that the laws of Georgia prohibited the guilty party from marrying again, and for this reason the marriage of Dr. Wilson in Alabama was illegal. But it is settled in this State, that such a prohibition had no extra-territorial operation, and that, notwithstanding the prohibition, the guilty party would be competent to marry in the State of his or her residence.—*Fuller v. Fuller*, 40 Ala. 501; *Reed v. Hudson*, 13 Ala. 570. The act of the General Assembly of Alabama, approved February, 1861, "for the relief of Robert S. Wilson," conferred this right, by declaring him to be "relieved of all the penalties and disabilities which by law attach to persons from or against whom a divorce had been ordained in any State." The disability of contracting marriage in Alabama, if it existed, was thus expressly removed by a law, which does not seem to have been obnoxious to any constitutional objection.

11. The identity of name in this act with that of the complainant's father, who was then a resident of Montgomery county, Alabama, is *prima facie* evidence of identity of person. Such is the rule, unless a name is shown to be very common in a country, or unless there be other facts which throw confusion on the supposed identity.—Whart. on Ev., § 701.

The other points urged are not, in our judgment, well taken.

The decree of the chancellor, under these views, is erroneous, and will be reversed, and the cause remanded.

CLOPTON, J. not sitting.