# Collier *v.* Henderson.

*Action on Common Counts, against Sureties on Official Bond of County Superintendent of Education.*

1. *Loan of money to county superintendent of education; repayment out of taxes collected, afterwards refunded, and applied on superintendent's default; liability of sureties.*—A county superintendent of education has no authority to borrow money for school purposes, and a loan of money to him creates no liability against the sureties on his official bond; if he transfers to the lender, as security, the county apportionment-sheet and the auditor's warrant, on which the tax-collector repays the amount borrowed, the lender receives it as a trust fund, which he is liable to refund; and if he refunds it, whether voluntarily or under legal compulsion, and it is applied to the extinguishment, *pro tanto,* of the superintendent's default, he has no cause of action against the sureties on the superintendent's bond.

[Collier v. Henderson.]

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by J. M. Collier, against J. T. Stephenson, W. D. Henderson, and A. T. Lockard; and was commenced on the 16th February, 1887. The action was discontinued as to Stephenson, who was not served with process; and the trial resulted in a verdict and judgment for the other defendants. The complaint contained only the common counts, and sought to recover money paid by plaintiff under the following circumstances: Stephenson, who was the county superintendent of education, applied to plaintiff in September, 18·· · for a loan of money for school purposes, stating that he w: authorized to borrow money, and that the schools would necessarily be closed, or suspended, unless he could procure a loan, as the taxes could not be collected until after January 1st. Plaintiff declined to make the loan without consultation with the probate judge, who, when asked, "told plaintiff it would be all right, provided he was satisfied with Stephenson's bond." On examination of the bond, plaintiff was not satisfied, and Stephenson thereupon gave a new bond, with the defendants as his sureties. A short time afterwards plaintiff advanced the money to Stephenson, aggregating $1,252; and Stephenson transferred to him, "first, the county apportionment-sheet, and afterwards the auditor's warrant on the tax-collector, in favor of county superintendent of education; the amount advanced by plaintiff, with interest, being indorsed on the warrant, and made payable to plaintiff out of the amount when collected;" and the tax-collector wrote on the warrant the word "Accepted," with his name and the date, which was December 31st, 1885. The tax-collector afterwards paid over to the plaintiff, out of the taxes as collected, the full amount advanced by him, with interest. In March, 1886, on examination of Stephenson's accounts as county superintendent, by Jas. W. Lapsley, then State Examiner, it was ascertained that he was a defaulter to the amount of about $6,000; and suit was brought against plaintiff, in the name of the State, to recover the money which had been paid to him by the tax-collector, as above stated. In consequence of this suit, and under threats of a criminal prosecution, plaintiff repaid the money which he had received ($1,252), to one Haley, who was the successor of Stephenson as county superintendent; "and it was applied, pro tanto, in payment of said Stephenson's default." This

[Collier v. Henderson.]

is the money which the plaintiff sought to recover by this suit.

"There was evidence tending to show that the money advanced by plaintiff to Stephenson was in fact applied by Stephenson to school purposes, but there was also evidence tending to show the contrary. The testimony tended to show that the defendants knew the facts, as to the payment of the money by plaintiff to Stephenson's successor, its application to said default, and the amount so applied, when they paid up the balance of said default; but there was some conflict in the testimony on this point. There was evidence, also, tending to show that, when the tax-collector paid over said money to plaintiff, plaintiff agreed to hold him harmless." This being "the substance of all the testimony in the case," the court charged the jury, on request of the defendants, that they must find for the defendants, if they believed the evidence. The plaintiff excepted to this charge, and also to the refusal of several charges asked by him; and he now assigns these rulings as error.

THORINGTON & SMITH, and W. A. COLLIER, for appellant, cited *Exall v. Partridge*, 8 T. R. 176; *Jeffries v. Gurr*, 2 B. & A. 833; *Parnell v. Ferran*, 6 B. & C. 439; *Grissell v. Robinson*, 3 Bing. N. C. 10; *Sargeant v. Currie*, 49 N. H. 310; *Nichols v. Breckman*, 117 Mass. 491; 4 Hill, 345; *Roundtree v. Holloway*, 13 Ala. 357; *Kenan v. Holloway*, 16 Ala. 53; 1 Greenl. Ev. § 108; 1 Wait's Ac. & Def. 110; 14 Johns. 188; 1 Foster, N. H. 549; 45 Vt. 214; 46 Wisc. 313; 76 Penn. St. 408.

GARDNER & WILEY, *contra*, cited *Kenan v. Holloway*, 16 Ala. 53; *Stephens v. Brodnax*, 5 Ala. 258; *Weakley v. Braham*, 2 Stew. 500; *State v. Houston*, 78 Ala. 583; *Carlisle v. Barker*, 57 Ala. 267.

STONE, C. J.—When Stephenson, the county superintendent of education, borrowed money from Collier, he transferred to him, first, the county apportionment-sheet, and, afterwards, the auditor's warrant on the tax-collector. These were transferred to Collier that he might, through them, collect from the tax-collector enough of the school fund of the county to repay to him the money he had lent to Stephenson. Holding the apportionment-sheet and the auditor's warrant, he did receive from the tax-collector a sufficient fund to

[Collier v. Henderson.]

reimburse himself. He knew, however, when he received this money, that it belonged to the school fund of the county, and was, therefore, a trust fund. Receiving this trust money, as he did, the law made him a trustee *in invitum*, and charged him with the duty and liability to restore the money to the trust fund, from which it had been improperly diverted. *Lee v. Lee*, 67 Ala. 406, and citations. When Collier restored the money to its rightful custodian—the succeeding county superintendent of education—he did only what the law and morality alike commanded, and such payment neither conferred nor strengthened any right to maintain this suit. It left him precisely where he stood when he negotiated the loan to Stephenson. It results from what we have said, that the repayment of the money by Collier to Haley, successor of Stephenson, whether made under coercion or voluntarily, can exert no influence in determining the question of the liability of Stephenson's sureties on his official bond.

The bond of the county superintendent, like the bonds of all public officers, binds him and his sureties, that he will faithfully perform all duties which are or may be required of him by law. It extends no farther. . The law not only fails to make it his duty to borrow money, but it gives no authority whatever to do so. When he borrowed Collier's money, he bound himself, but he bound no one else.—*Kirkman v. Benham*, 28 Ala. 501; *Morrow v. Wood*, 56 Ala. 1; *City Council v. Hughes*, 65 Ala. 201.

Stephenson, when removed from office, was largely a defaulter. There was testimony tending to show that some, or all of the money borrowed from Collier, was applied by Stephenson in support of the public schools. There was also testimony showing that the money refunded by Collier to Haley reduced, *pro tanto*, what otherwise would have been the amount of Stephenson's default, for which his sureties would have been liable. This, the appellant contends, raised an implied promise on the part of the sureties to repay the money to Collier. The particular ground on which this contention is rested is, that, to the extent Collier's money was so used, it reduced the liability of the sureties, and that they availed themselves of it in their settlement, paying that much less on account of Stephenson's default.

We have shown above, that no obligation, legal or moral, rests on the sureties to refund to Collier the tax money he was required to restore to Haley, Stephenson's successor.

[Lee v. Boyd.]

He thereby only returned a trust fund to its proper custodian; a trust fund which he had acquired illegally, and held illegally.

There is as little merit in the other phase of his contention. Stephenson borrowed the money from Collier without authority, and, as the sequel showed, to supply a deficit in the school funds, caused by his own misuse of them. His sureties are not shown to have had any connection with the negotiation of the loan. As to them, it was *res inter alios*. It was a voluntary parting with his money by Collier, not in obedience to their request, and not in consequence of any legal liability resting on them to pay it. No one can gratuitously, or without request, pay money for another, and thereby make that other his debtor, unless he is first under a legal liability to pay, such as that of a surety, indorser or guarantor, who, after default of his principal, pays the money; or, unless the payment is made to relieve his property from an incumbrance, which the other is bound to remove.—*Weakly v. Braham*, 2 Stew. 500; *Stephens v. Brodnax*, 5 Ala. 258; *Kenan v. Holloway*, 16 Ala. 55; 3 Brick. Dig. 786, §§ 55, 60. If we were to pronounce in favor of this suit, we would thereby declare that, if A lends money to B, and B with that money pays a debt on which C is his surety, thus relieving C of his liability, A may maintain an action against C, and reimburse himself for the money lent to B, although C was not consulted, and had nothing to do with the transaction.

The authorities relied on by appellant furnish no warrant for this suit, although they may be sound enough in the cases in which the judgments were rendered.

Affirmed.