# Sanford *v.* Hamner.

*Bill in Equity for the Establishment of a Trust in Lands and for an Equitable Estoppel.*

1. *Equitable estoppel; when shown to exist.*—Where a person, at the request of a municipality and as its agent, attends a public sale of land and bids in the property, using the funds of the municipality to make the cash payment, and a deed is made to him as absolute purchaser, and for the deferred payments, for the accommodation of the municipality there are notes given by such person and others, and the municipality takes possession of the property, using it for the purposes for which it was intended to be purchased, claiming and exercising acts of ownership, and subsequently, upon such municipality offering the property for sale, the same person consents to act as agent for a third party, who was one of the makers of the notes given for the deferred payments in the original purchase, and bids off the property for said third party, who pays the amount bid, receives a deed, enters into adverse possession of the property claiming title under said deed, said party who acted as agent is estopped to set up any claim of ownership as against the third party who purchased from the municipality; and the fact that after the purchase from the municipality said party paid the amount remaining due of the purchase money from the municipality, does not relieve him from the effects of the estoppel.

2. *Same; same; case at bar.*—On a bill filed for the establishment

[Sanford v. Hamner.]

of a trust in real property and for the enforcement of an equitable estoppel, it was shown that the defendant at the instance and request, and for the use and benefit of a municipal corporation, purchased property situated within its limits, and used in making the cash payment of the purchase money funds of the municipality, and for the residue of the purchase money the complainant, the respondent and another party gave their individual notes for the accommodation of the town; that an absolute conveyance of the property was executed to the defendant by the persons making the sale; that the town went into immediate possession, claiming absolute ownership, and after using the property for the purposes for which it was purchased, offered it for sale at public auction; that the complainant, desiring to purchase the property at such sale, procured the defendant to act for him in making the purchase, and the defendant accordingly attended the sale and bid off the property for the complainant at a large sum, which sum the complainant paid to the municipality, received a deed therefrom, went into immediate, actual, adverse possession of the property as absolute owner; that the defendant did not assert any claim of ownership or interest in his own behalf to the premises in either of these transactions or during the intervening time, but after the purchase and the complainant had taken possession, the defendant set up a claim that the purchase at the latter sale was for the use of himself and complainant, and filed a bill to enforce such claim, which was defeated; and about the time of making the claim he paid the balance of the purchase money due from the municipality, which payment was made against the protest of complainant, who was, at the time, mayor of said municipality. *Held:* That the defendant is estopped in a court of equity to set up against the complainant his legal title to the property, upon the complainant's paying or offering to pay to him the amount of the purchase money due from the municipality with interest, which he paid with his own funds.

3. *Same; enforcement in equity.*—Where the averments of a bill filed for the enforcement of a trust in land and for the enforcement of an equitable estoppel shows that there was a trust in the lands in favor of the complainant, and there existed an equitable estoppel in his behalf as against the defendant, and it is further shown that in the transactions out of which such relations were created, the defendant, out of his own funds, made the deferred payments of the purchase money for the lands involved in the controversy, which amounts were evidenced by promissory notes executed by himself, the complainant and another jointly, the bill to contain equity must offer to refund to the defendant that portion of the purchase money which he had paid with his own funds, and the fact that he made the payments voluntarily and against the protest of his beneficiary, does not relieve it from the requirement of such averments; since, as a condition precedent to the obtaining of the relief prayed for, the complainant must offer to do equity by making the defendant whole, in respect of the purchase money paid by him.

[Sanford v. Hamner.]

4. *Constructive trusts; when shown to exist.*—Where one party at the instance and request of another and for his use and benefit acts as agent in bidding off lands sold at public auction, using the funds of his principal to make the cash payment, but the deed of conveyance is executed to him individually as absolute owner, there is created a constructive trust in said lands in favor of the principal against the party who acted as agent; and this trust constitutes an equitable estate which is capable of sale, and upon its being purchased by a third party, the right to enforce the trust becomes invested in such third party.

APPEAL from the Chancery Court of Fayette.
Heard before the Hon. THOMAS COBBS.
The bill in this case was filed by the appellant, John B. Sanford, against the appellee, Clem A. Hamner. The facts of the case are sufficiently stated in the opinion.
The appeal is from a decree of the chancellor sustaining the defendant's demurrer and motion to dismiss the bill for the want of equity.

DANIEL COLLIER and A. B. MCEACHIN, for appellant, cited *Parrish v. Steadham*, 102 Ala. 615; *L. & N. R. R. Co. v. Philyaw*, 94 Ala. 463; *McLure v. Tennille*, 89 Ala. 572; *Firestone v. Firestone*, 49 Ala. 128; *Kyle v. McKenzie*, 94 Ala. 239; *Kingsbury v. Milner*, 69 Ala. 502; *Stoudenmire v. DeBardelaben*, 72 Ala. 300; *Conner v. Smith*, 74 Ala. 115.

M. B. MCCOLLUM and JONES, MAYFIELD & BROWN, *contra.*

HEAD, J.—The case is before us on demurrer to the bill and motion to dismiss for the want of equity, both sustained by the chancellor in vacation, without granting leave to amend.
The case made is substantially, that the county of Fayette, owning a described lot of land with a court-house thereon, the county commissioners sold the same at public auction, and it was bid off by the respondent, Hamner, at the price of $215, and an absolute conveyance of the property was executed to him by the commissioners. Whether the mandatory provisions of section 888 of the Code of 1886, which are essential to a disposition of county property by the commissioners, were complied with or not, does not appear, either by the recitals of the

[Sanford v. Hamner.]

deed or averments of the bill; but the bill is capable of amendment on this point, and the demurrers do not raise the objection we have indicated. We will, therefore, treat the sale and conveyance as having been legally made by the county commissioners.

The bill alleges that this purchase by respondent was made at the instance and request, and for the use and benefit, of the municipal corporation of Fayetteville, within whose limits the property was situated, for use as a council chamber; that he acted as such agent throughout the transaction and used the funds of the corporation, furnished to him for that purpose, in making a cash payment of one-half of the purchase money; that for the residue of the purchase money (there being some doubt expressed of the power of the municipality to give a binding obligation therefor), the complainant, Sanford, the respondent and one J. H. Moore gave their individual notes for for the same, for the accommodation of the town; that the town went into immediate possession and after using the property for some time as a council chamber, determined to sell the same, and did expose the same to sale at public auction. To this point, the bill avers, the respondent had made no claim whatever to the property, but treated and recognized it, always, since the sale by the county commissioners, as the property of the town. The town, before its sale, was ready and endeavored to pay the county the balance of the purchase money, and did not do so because one of the notes could not be found. The complainant, Sanford, desiring to purchase the property at the sale to be made by the town, procured the respondent to act for him in making the purchase, and he, accordingly, attended the sale and bid off the property for complainant at the price of $1,600, which sum complainant paid to the town, and, for the same, received the deed of the municipal authorities and went into immediate, actual, adverse possession of the property and has continued therein ever since. To the time of this purchase, payment of the purchase money, and taking possession, which occurred in February, 1895, and up to about the middle of April following, respondent still made no claim to the property, but about the latter date set up a claim that he had a half interest in complainant's purchase, and sought to enforce it in chancery, but was defeated. About the time of making this claim

[Sanford v. Hamner.]

(April 13, 1895), and just before filing his bill to enforce it, he, against the protest of complainant as mayor of the town (which office complainant held), paid to the county the balance of said purchase money due it, represented by the notes of himself, complainant and said Moore, as aforesaid.

On August 5, 1895, the respondent instituted, against complainant, an action of trespass *quare clausum fregit* and trover, joined in separate counts, claiming damages, in the count of trespass for pulling down and destroying the buildings on the lot; and in the count of trover, for the conversion of 75,000 bricks taken therefrom; the alleged wrongs occurring subsequent to complainant's purchase and entry into possession. This action is still pending. The bill avers that respondent, claiming said property, has moved a large quantity of said property from the premises, against the protest of complainant; and that complainant is informed and verily believes that he is likely to remove and convert to his own use, more of said property, if not restrained, &c. The insolvency of respondent and his inability to respond in damages are averred. The bill insists that respondent is estopped in equity to assert his legal title against complainant, and prays that he be divested of, and complainant invested with, that title; and that the deed from the county commissioners to respondent be cancelled. The bill also prays prevention of further trespasses, by injunction; for account of damages already committed, injunction of the action at law, and for general relief.

The demurrers and motion to dismiss appear to proceed upon the theory that the scope and purpose of the bill are only to establish and enforce, in behalf of complainant, as the purchaser from the town, an express parol trust in the land; or a resulting trust therein, arising from the payment of the purchase-money by the town; and respondent insists upon the inhibition of the statute upon the creation of such an express trust in lands, and contends that the averments do not make a case of resulting trust, enforceable by complainant.

We find, however, that the bill takes a step beyond this, and, in addition, stands for relief upon the equity of estoppel by conduct, or equitable estoppel, as it is called. We will proceed to notice, first, this feature of

[Sanford v. Hamner.]

the case, remarking, however, that there is no equity in the bill for the enforcement of an express trust in the land, by reason of the statute against it. We will dispose of the question of resulting trust further on.

. We are of opinion that, upon the facts averred in the bill, the respondent is estopped, in a court of equity, to set up against the complainant his legal title to the property, upon the complainant paying, or offering in his bill to pay, to him the amount of the purchase-money, with interest, which he, respondent, paid to the county with his own funds. The estoppel rests upon a course of conduct, on his part, averred in the bill, which renders it inequitable for him now to say that the town was not the real owner of the property, and that its sale to complainant did not pass that ownership to him. Treating the deed of the county commissioners as we have said we would, it passed the legal title to respondent, and no express trust can be engrafted upon it; but it is nevertheless true, that, known to the town authorities, including the complainant, who was then mayor of the town, and who joined in the notes for the deferred payments of the purchase-money, he accepted an agency to purchase for the town; accepted from the town the money to make the cash payment; permitted the town to take possession and use the property, as its council chamber, for more than two years, under claim of absolute ownership; made no claim whatever to the property, but, at all times recognized and treated it as the property of the town; and, most material of all, and upon which the estoppel mainly depends, when the town determined to sell, he not only stood by and made no claim whatever, but, knowing that the town was claiming and selling as absolute owner in its own right, he consented with the complainant that he would attend the sale and act as the complainant's agent, as an intending purchaser; and did actually attend, as such agent, and, for the complainant, became the highest bidder at $1,600, and suffered the complainant to pay the purchase-money, receive the deed of the town authorities and go into actual possession, as absolute owner, without asserting any claim in his own behalf; and, thereafter, set up the claim that the purchase made at the sale by the town was for the use of both himself and complainant, filed his bill in chancery to

enforce the claim and prosecuted it to an unsuccessful termination; thus still recognizing the ownership of the town and the validity of the sale made by it. His conduct was the same in substance, as if he had said to complainant: "I hold the legal title to this land by absolute deed, but I purchased it for, and at the request of, the town of Fayetteville, as its absolute property, and paid the cash payment with money furnished by it. With my knowledge and consent the town took possession, as exclusive owner, and as such, has continued to occupy and use it ever since. I have no real beneficial interest in it; have made no claim to it, and now make none; and you may now purchase from the town, pay your money therefor and acquire the property free from any claim on my part; and I will act for you in bidding at the sale." Accordingly, he attends the sale, bids for complainant a large sum, and suffers him to pay the same, receive a deed and go into actual possession, as absolute owner, without objection, let or hindrance from any source. We are clear in the opinion, that it would be inequitable —amounting to fraud—for a person who has so acted to afterwards insist upon his legal title; and that the same should be prevented by a court of equity. We hold, therefore, that upon the defect in the bill now to be mentioned being cured by amendment, the bill contains equity, upon sufficient allegations, for the respondent's divestiture of the legal title and complainant's investiture thereof, on the ground of equitable estoppel, and that the chancellor erred in sustaining the motion to dismiss for the want of equity.

Under the circumstances disclosed by the bill, equity requires that the complainant offer to refund, as a condition of relief, that portion of the purchase money which respondent paid the county, with his own funds. The bill attempts to relieve itself of this requirement by taking the position that the payment was voluntary and against the protest of the town; but the position is untenable. Respondent had, with others, legally bound himself to pay the amounts, by the promissory notes he executed, and it was his legal right and duty to pay the same. Complainant, being also bound, was at liberty to relieve this situation by anticipating the respondent, in making the payment. When the complainant purchased,

[Sanford v. Hamner.]

both he and respondent knew that this purchase money was outstanding, and that they, with Moore, were responsible for the same. It could not have been the intention or expectation of either, that respondent would waive his legal title, without being made whole in respect of his liability in this regard, and, whilst being deprived of his title, he is entitled to be saved from loss by reason of the payment he made. Inasmuch as the three makers of the purchase money notes were, in point of actual intention, mere sureties for the town, which, itself, ought to have paid the purchase money, we have considered whether the respondent ought to receive, by way of reimbursement from the complainant, more than the amount of the proportionate liabilities of complainant and said Moore, as co-makers of said notes. We think thus to limit his rights, would be to give force and effect to the express parol trust, which, under the statute, we can not do. The bill should be amended, so as to contain the necessary offer to do equity, and if not so amended, should be dismissed. The ground of demurer, pointing out this defect, was well assigned. There was error, however, in sustaining it in vacation, without giving complainant leave to amend.

Again, the facts averred establish, in complainant's favor, a trust arising by operation of law, giving the bill an equity as broad as the estoppel above discussed. It is not a resulting trust, though resembling it in some respects. It is a trust by construction of law, so long known and recognized in the books as a "*constructive trust*," and arising from a breach by the respondent of a duty imposed by a fiduciary relation subsisting between him and the town of Fayetteville. The bill shows, as we have seen, that the respondent accepted an agency to purchase the property for the town, and was furnished by the town with the necessary funds to pay, in cash, one-half of the purchase money; that in the execution of such agency, he concluded the purchase and paid, with the funds so furnished him, the required cash payment. Instead of taking the title in the name of the town, or his own name as express trustee of the town, he took it in his own name as absolute purchaser and owner, in his own right. The case is thus brought squarely within a well defined, well understood class of constructive trusts, which does not, like a resulting trust proper

(which arises by a purchase, by one not a fiduciary, in his own name, and the payment of the purchase money in whole or in part by another, in favor of him who pays the purchase money), depend upon the presumed intention of the parties, or require that the purchase money should have been paid at the time of the purchase. It proceeds rather upon the principle that the fiduciary, whose duty is always to act, in good faith, for the best interests of his beneficiary, is guilty of fraud, actual or constructive, if he makes an investment of trust funds committed to him and takes the title to the property himself, in his own right, or otherwise uses his fiduciary position to acquire interests in his own name and behoof. The whole doctrine is so tersely and admirably stated by Mr. Pomeroy, in his great work on Equity Jurisprudence, that it is valuable to reproduce his language here. In section 1044, Vol. 2, he says: "Constructive trusts include all those instances in which a trust is raised by the doctrines of equity for the purpose of working out justice in the most efficient manner, where there is no intention of the parties to create such a relation, and in most cases contrary to the intention of the one holding the legal title, and where there is no express or implied, written or verbal, declaration of the trust. They arise when the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, when the property thus obtained is held in hostility to his beneficial rights of ownership. As the trusts of this class are imposed by equity, contrary to the trustee's intention and will, upon property in his hands, they are often termed trusts *in invitum*; and this phrase furnishes a criterion generally accurate and sufficient for determining what trusts are truly (constructive.) An exhaustive analysis would show, I think, that all instances of constructive trusts properly so called may be referred to what equity denominates fraud, either actual or constructive, as an essential element, and as their final source. Even in that single class where equity proceeds upon the maxim that an intention to fulfill an obligation should be imputed, and assumes that the purchaser *intended* to act in pursuance of his fiduciary duty, the notion of fraud is not invoked, simply because it is not absolutely necessary under the circumstances; the existence of the trust

[Sanford v. Hamner.]

in all cases of this class might be referred to constructive
fraud.   This notion of fraud enters into the conception
in all its possible degrees.   Certain species of the con-
structive trusts arise from actual fraud; many others
spring from the violation of some positive fiduciary ob-
ligation; in all the remaining instances there is, latent
perhaps, but none the less real, the necessary element of
that unconscientious conduct which equity calls con-
structive fraud.   Courts of equity, by thus extending the
fundamental principles of trusts—that is, the principle
of a division between the legal estate in one and the
equitable estate in another—to all cases of actual or con-
structive fraud and breaches of good faith, are enabled
to wield a remedial power of tremendous efficacy in pro-
tecting the rights of property; they can follow the real
owner's specific property, and preserve his real owner-
ship, although he has lost or even never had the legal
title, and can thus give remedies far more complete than
the compensatory damages obtainable in courts of law.
The principle is one of universal application; it extends
alike to real and personal property, to things in action,
and funds of money.''

Again, in section 1049, he says:   ''Another import-
ant form of the trust arises from the acts of persons al-
ready possessing some fiduciary character or standing
in some fiduciary relation.   Whenever a trustee or other
person in fiduciary capacity, acting apparently within
the scope of his powers—that is, having authority to do
what he does—purchases property with trust funds and
takes the title thereto in his own name without any de-
claration of trust, a trust arises with respect to such
property in favor of the *cestui que trust* or other benefi-
ciary.   Equity regards such a purchase as made in
trust for the person beneficially interested, independently
of any imputation of fraud, and without requiring any
proof of an intention to violate the existing fiduciary
obligation, because that it assumes that the purchaser
intended to act in pursuance of his fiduciary duty, and
not in violation of it.   This doctrine is of wide applica-
tion; it extends to trustees, executors and administra-
tors, directors of corporations, guardians, committees of
lunatics, agents using money of their principals, part-
ners using partnership funds, husbands purchasing
property with money belonging to the separate estate of

[Sanford v. Hamner.]

their wives, parents, and children, and all persons who stand in fiduciary relations toward others. Equity jurisprudence contains few more efficient doctrines than this in maintaining the beneficial rights of property." See, also, 1 Story Eq. Juris., § 316.

It is the settled doctrine of this court, (as it is well nigh of all the rest) that the general statute of frauds, in reference to the requirement of writings, has no application to trusts of this character, and that they may be established by parol evidence, showing the existence, nature and incidents of the fiduciary relation, and its violation, and the nature and effect thereof. Indeed, section 1845 of the Code, which forbids the creation of express trusts, except by writing, expressly excepts such trusts as "result by implication or construction of law, or which may be transferred or extinguished by operation of law."

There can be no doubt, therefore, that the town of Fayetteville was invested with an equity of the constructive character of which we have been speaking, by which it could have acquired, in a court of equity, the legal title.

This equity is not merely a right or cause of action, personal to the beneficiary, authorizing him to sue for, and thereby acquire an estate in the land, but, like a resulting trust proper, or the equity of redemption of a mortgagor, after forfeiture, it is, in and of itself, an equitable estate; vendible and descendible as any other interest in lands, and capable of being executed into a legal estate by the decree of a court of equity, at the suit of the beneficiary, or any one in privity with him, in blood or estate.—1 Pom. Eq. Juris., § 375; 2 Ib., § 1043. This, equity, arising from the wrongful purchase in his own name using the town's funds, was the only estate the town held in the premises, and that passed by its deed to the complainant, by virtue of which he is entitled to maintain this bill.

The respondent was special agent to purchase this particular property for the town, at the commissioners' sale. He could not in equity, therefore, buy for himself and hold absolutely against the town, even though he had paid the entire purchase money with his own funds. Any purchase he could have made of this property, so long as occupying the relation of agent, afore-

said, would have enured to the town, at its option; and the most he could have demanded was a return of the purchase money paid by him, and the right to hold the legal title to the land, by virtue of his deed, as security for such return.—2 Story Eq. Juris., § 1211. The town, therefore, seeking to obtain the legal title in a court of equity, must have offered to do equity by making the respondent whole, in respect of the purchase money paid by him; and the complainant, succeeding as vendee to the estate of the town, is required to do likewise. The bill, therefore, in this aspect of the case, as in the other, is defective, on demurrer, for its failure to offer to do equity in this regard.

Injunction of threatened trespasses, by the respondent, upon the possession of the complainant, and an account of the damage committed, as well as injunction of pending suits for torts against complainant in respect of the property, though they may not be of such character as, of themselves alone, would give equity to the bill, are yet proper incidents to enforcement of the equity which the bill otherwise contains.

These considerations, we think, dispose of the material questions presented by the record. The chancellor erred in sustaining the motion to dismiss for want of equity. The demurrer was properly sustained, on the ground, and for the reason herein pointed out, but there was error in failing to grant leave to amend, the decretal order having been made in vacation. The decree will be reversed and a decree here rendered overruling the motion to dismiss for want of equity, and directing that the chancellor sustain the demurrers to the bill, unless it shall be amended in conformity to this opinion, within such time as the chancellor may prescribe.

Reversed, rendered and remanded.