(88 South, 838)

## AMERICAN BONDING CO. OF BALTIMORE v. FOURTH NAT. BANK OF MONTGOMERY. (3 Div. 466.)

(Supreme Court of Alabama. May 12, 1921.)

**1. Subrogation ⊛⇒33(2)—Surety can acquire by subrogation no greater rights than creditor.**

A surety cannot acquire by subrogation any greater rights than those possessed by the secured creditor whose claim the surety paid.

**2. Limitation of actions ⊛⇒49(1)—Action for money received accrues at date of receipt.**

A cause of action to recover money received by a bank, which in equity and good conscience belonged to a ward, is an action for money had and received, which accrued at the date of the receipt of the money, and is barred in six years thereafter.

**3. Equity ⊛⇒87(3)—Statute runs against trust which can be sued for at law.**

A bill in equity to have a bank declared a trustee of money, which in equity and good conscience belonged to a ward, and which does not seek the recovery of any specific property, but only to fasten a pecuniary liability, and is therefore one which could be maintained at law, is barred by the statute of limitations the same as the action at law would be, in view of Code 1907, § 3091.

**4. Limitation of actions ⊛⇒102(9)—Bank participating in misappropriation of guardian's funds is constructive, not express, trustee.**

A bank in which a guardian had deposited the funds of his ward, and which knowingly participated in the misappropriation of those funds and received the benefit thereof, became a constructive trustee of the funds, if there was any trust at all, and not an express trustee.

**5. Limitation of actions ⊛⇒102(8)—Constructive trusts are within operation of statute.**

Constructive trusts are within the operation of the statute of limitations.

**6. Limitation of actions ⊛⇒177(2)—Bill showing time had elapsed is demurrable unless it shows exception to statute.**

A bill to enforce a constructive trust, which shows that the period of limitation had elapsed since the money was received by the constructive trustee, is demurrable, unless it clearly states facts and circumstances which would take the cause out from the operation of the statute.

**7. Limitation of actions ⊛⇒72(1)—Minority of ward does not suspend statute against action for misappropriation.**

The disability of a minor ward does not suspend the operation of the statute of limitations against an action by the guardian's surety, claiming subrogation of the minor's rights, against a bank which participated in the guardian's misappropriation of the funds.

**8. Limitation of actions ⊛⇒105(1)—Fraudulent receipt and discharge of guardian do not suspend statute against one sharing in misappropriation.**

The fact that a ward on attaining her majority gave her guardian a receipt in full, upon which he was discharged, which receipt and discharge were later set aside as fraudulent, does not suspend the operation of the statute of limitations against an action by the guardian's surety against a bank which shared in the guardian's misappropriation of the funds, based on the surety's subrogation to the rights of the ward.

McClellan, J., and Anderson, C. J., dissenting.

Appeal from Circuit Court, Montgomery County; William L. Martin, Judge.

Bill by the American Bonding Company of Baltimore against the Fourth National Bank of Montgomery, seeking to hold it as trustee of certain funds and to require the same paid over. From a decree sustaining demurrers to the bill because void by the statute of limitations, complainant appeals. Affirmed.

Stuart Mackenzie and Ball & Beckwith, all of Montgomery, for appellant.

There is no question of the right of complainant to be subrogated to the rights of the ward and the guardian. 127 Tenn. 720, 157 S. W. 414; 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 669; R. C. L. article 16, p. 1332. The bank not only had notice that the funds were impressed with the trust, but had recognized the existence of that trust. 79 Ala. 201, 58 Am. Rep. 590; 67 Ala. 406; 94 Ala. 466, 10 South. 546; 86 Md. 400, 38 Atl. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513 and authorities, supra. On these authorities above quoted it must be held that the bank was liable to

the cestuis que trustent, as it knowingly aided and participated in the breach of the trust. Authorities, supra. The bill was not bothered by the statute of limitations. 25 Cyc. 1169, 1170, and cases there cited.

Weil, Stakely & Vardaman, of Montgomery, for appellee.

A surety, paying the debt of its principal, cannot occupy a better or higher position than its principal. 22 Ala. 782; 25 Ala. 250; 37 Cyc. 429. This applies so far as the running of the statute of limitations is concerned. 76 Ala. 474; 17 R. C. L. 833; 125 Wis. 297, 103 N. W. 1106, 110 Am. St. Rep. 827. The question of the running of the statute is properly raised by demurrers here. 203 Ala. 692, 85 South. 1; 129 Ala. 531, 30 South. 735; 116 Ala. 576, 22 South. 984. In reference to the statute of limitations as applied to the facts in this case, see 121 Ala. 281, 25 South. 820; 177 Ala. 441, 59 South. 155; 149 Ala. 196, 42 South. 867; 127 Ala. 411, 30 South. 510; sections 4832 and 4835, Code 1907. The bank was neither an expressed nor an implied trustee. 74 Ala. 546; 155 Ala. 406, 46 South. 642. Even if the bank was a trustee, the statute would apply. 8 Port. 211; 31 Ala. 115; 55 Ala. 525; 74 Ala. 546; 203 Ala. 692, 85 South. 1. The fact that Estell Manigold was a minor, when her right of action accrued did not stop the running of the statute. 54 Ala. 141; 85 Ala. 504, 5 South. 89.

McCLELLAN, J. (dissenting). This bill was by the appellant against the appellee, filed on May 27, 1919. The original demurrer and the added grounds were filed June 26, 1919, and November 10, 1919, respectively, and the submission on the demurrers was had November 10, 1919. The decree sustaining the demurrers, from which this appeal is taken, was entered June 4, 1920. The cause was docketed and submitted in this court on December 12–16, 1920.

A recital of the presently material facts set forth in this bill will be made.

The appellant is a bonding company, and the appellee is engaged in a general banking business. In 1906 Clara J. Manegold was the guardian of her stepdaughter, Estelle Manegold, who later married W. H. Beavan. In 1906–07 a shortage in the guardian's accounts was found and its amount determined. To satisfy this shortage in the Clara J. Manegold guardianship, George Manegold, the husband of Clara J., borrowed $12,000 from the appellee (Fourth National Bank); the loan being made to him in or through Joseph Manegold & Co., which was the name by which George Manegold conducted his business—a fact averred to be known to the lender, the appellee. The funds thus received were paid into the registry of the court in which the guardianship of Clara J. was pending and was then being investigated; and a decree was entered discharging another bonding company that was bound as the surety for Clara J. in the premises. On, to wit, January 13, 1907, about 30 days after the mentioned loan was effected, George Manegold was appointed the succeeding guardian for the said ward; this appellant becoming the surety of George Manegold on his guardian's bond. "Thereafter," it is averred in the fifth paragraph of this bill:

"On, to wit, the 5th day of February, 1907, the said W. H. Parks, as such register, issued his check No. 69, drawn on the Fourth National Bank of Montgomery to the order of George Manegold, as guardian, for the sum of $12,316.-46; that said check is further marked 'a/c Clara J. Manegold v. Estelle Manegold,' and bears the following indorsements, 'Geo. Manegold, Guardian'; that on said 6th day of February, 1907, the said Fourth National Bank opened an account in the name of the said George Manegold, as guardian, and credited said account with the sum of $12,316.46, the same being the said check of the said W. H. Parks, as register, drawn on said Fourth National Bank in favor of said George Manegold, as guardian; that thereafter, on, to wit, the 20th day of February, 1907, the said George Manegold, as guardian, drew a check against said account, payable to Joseph Manegold & Co., which was the style under which George Manegold was doing business as aforesaid, for the sum of $5,000, which said check was paid by said Fourth National Bank and said sum of $5,000 credited to the said account of said Joseph Manegold & Co. with said Fourth National Bank; that on said 20th day of February, 1907, the said Joseph Manegold & Co. drew its check, payable to said Fourth National Bank, which said check was charged to the account of the said Joseph Manegold & Co. and the proceeds thereof applied on said indebtedness of the said George Manegold, as Joseph Manegold & Co., to the Fourth National Bank in said sum of $12,000; that thereafter, on, to wit, the 12th day of March, 1907, the said George Manegold, as guardian, drew his check on said account in said Fourth National Bank for the sum of $7,300, payable to said Joseph Manegold & Co., which said amount was credited to the account of said Joseph Manegold & Co. in said Fourth National Bank, and was thereafter applied to the payment of said indebtedness of $12,000; that after the payment of said checks the balance to the credit of said George Manegold, as guardian, of $16.46, remained to his credit until the 1st of November, 1912, when the said George Manegold, as guardian, drew a check therefor; that said three checks for $5,000, $7,316.46 and said deposit of $12,316.46 are all of the debits and credits appearing on said account of said George Manegold, as guardian, in said Fourth National Bank."

Estelle Manegold became of age on the 19th day of October, 1908, the guardianship of George Manegold was apparently settled by the receipt of the ward, and in 1909 a consent decree was entered discharging Manegold and this appellant as the surety on his

guardian's bond. The decree was impeached for fraud in a bill filed by Estelle Manegold Beavan, September 15, 1913, and through the contest that followed this decree was annulled in 1913. Manegold v. Beavan, 189 Ala. 241, 66 South. 448; s. c., 201 Ala. 169, 77 South. 695. Consequent upon the liability finally judicially established (in May, 1919), through that litigation, this appellant, as surety for George Manegold, guardian, paid to Estelle Manegold Beavan the sum of $18,-492.76, with $129.75 court costs.

It also appears from the bill that in June, 1914, while the mentioned litigation was pending, George Manegold filed his petition in voluntary bankruptcy; that he died in December, 1914; and that Estelle Manegold Beavan filed against the bankrupt's estate the claims resulting from his guardianship for her, and that she received in 1918 and 1919, in dividends under the administration of the bankrupt estate of George Manegold, her late guardian, the sum of $8,972.50.

In the seventh paragraph of the bill it is averred, among other things:

"* * * That the said Fourth National Bank was charged with notice of the trust impressed upon said sum of $12,316.46 credited by it to the account of George Manegold, as guardian, it having been put on notice of the character of said funds by said check of said W. H. Parks, register, for said sum, drawn on said Fourth National Bank to the order of said George Manegold, as guardian, and said Fourth National Bank recognized the trust impressed upon said funds by placing the same to the credit of George Manegold, as guardian; that thereafter the said Fourth National Bank, with knowledge of the character of the funds deposited with it, permitted the said trustee, the said George Manegold, guardian, on, to wit, the 20th day of February, 1907, to divert $5,000 thereof to his own use, and thereafter, to wit, the 12th day of March, 1907, permitted the said George Manegold to divert the further sum of $7,300 thereof to his own use, which said funds diverted as aforesaid were by said Fourth National Bank credited to the account of said Joseph Manegold & Co., which said firm the said Fourth National Bank well knew was nothing more than the name or style under which the said George Manegold did business and your orator avers that said Fourth National Bank further participated in ' said breach of trust by permitting said George Manegold to use said trust funds, diverted to the said account of Joseph Manegold & Co., as aforesaid, to repay to the said Fourth National Bank said $12,000 loaned by it to the said George Manegold, under the style of Joseph Manegold & Co., as aforesaid."

The bill's averments and prayer characterize it as a bill for subrogation of a surety to the rights of the creditor of the surety's principal against a third party who participated in the misappropriation by the surety's principal of money of a cestui que trust. Besides a general prayer, the particular prayer is:

"That said Fourth National Bank be declared to be a trustee of said trust fund to the extent of $12,300 for the estate of said Estelle Manegold Beavan, and that it be ordered and decreed forthwith to pay over to your orator [complainant appellant] said sum. * * * "

The bill's theory refers it to this well-established equitable doctrine: Where the surety of a fiduciary, like a guardian, has been compelled to make good a breach of trust by his principal, the surety is subrogated to the right of the cestui que trust as against the fiduciary, as well as against any participant in the breach which the surety has been compelled to satisfy. 25 R. C. L. p. 1332, § 16; 13 Ann. Cas. pp. 429, 430, collecting decisions affirming the doctrine. Illustrations of its effect are afforded by cases where banks of loan and deposit knowingly accept payment of the individual debt of the fiduciary to the bank out of funds on deposit that the bank knows are funds impressed with a trust character. U. S. Fidelity Co. v. Adoue, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667, annotation, pp. 677, 678; Wolffe v. State, 79 Ala. 206, 58 Am. Rep. 590.

As it appears from this statement of the bill, it is averred expressly that the loan was made to George Manegold, in the name of Joseph Manegold & Co., and that, to the actual knowledge of the bank, this company was but the trade name—a commercial alter ego—under which George Manegold conducted his business. The necessary result from these averments is that the check by George Manegold, guardian, passing the trust fund to Joseph Manegold & Co., was in effect, a conversion of that fund to George Manegold individually, with the knowledge of the bank, and that when "Joseph Manegold & Co." gave the checks described to the bank to pay this Manegold loan they were, to the knowledge of the bank, in effect the individual checks of George Manegold to the bank to pay the individual debt of George Manegold to the bank while so advised in the premises. Under the facts and knowledge averred, the process pursued was nominally indirect, circuitous; but this course contributed, in legal effect, nothing different had the process been direct, instead of circuitous, omitting the nominal interposition of "Joseph Manegold & Co." These acts, with the knowledge the bank is averred to have had, characterized the bank a participant, to its advantage, in the misappropriation of the trust fund to the extent it was thus absorbed, and so notwithstanding it is not specifically alleged in the bill that the bank entertained such design when the loan was thus made. Lee v. Lee, 67 Ala. 406; Wolffe v. State, 79 Ala. 201, 58 Am. Rep. 590; Collier v. Henderson, 86 Ala. 279, 5 South. 488; Allen v. Trust Co., 211 Mass. 409, 97 N. E. 916, L. R. A. 1915C, 518. Under these cir-

cumstances this court has held that such a participant—a third party so advised and so profiting by the breach of trust committed—is a "cotrustee" with the original trustee, "liable to account for its misappropriation" (Wolffe's Case supra); is a "joint" trustee upon whom was imposed "all the duties and disabilities of the rightful trustee and guardian, * * * but without the powers and rights of the latter," whereby the cestui que trust becomes empowered "to charge this trust upon the company [the bank here], and make it an original debtor, * * * in common with the lawful guardian and rightful trustee" (Lee v. Lee, supra). Generally the statutes of limitation do not apply to express trusts; exceptional circumstances being requisite to inaugurate the statute's operation between the trustee and the beneficiary. McCarthy v. McCarthy, 74 Ala. 546, 553; Kennedy v. Winn, 80 Ala. 165, 171, 172; Bonner v. Young, 68 Ala. 35, 40; 2 Beach on Trusts, § 668 et seq. There are no averments in this bill bringing it within the exceptions defined in the McCarthy and Kennedy Cases, supra. The definition given in the Lee and Wolffe Cases, supra, of the relation created or assumed by a third party, knowingly participating in the breach of the trust committed, to the rightful trustee, according to the allegations of this bill, characterized the appellee bank a cotrustee or a joint trustee with the guardian in the premises, and invested the ward with the right to make the bank an original debtor with the guardian, jointly liable and similarly accountable, and hence, as between the ward and the guardian, the statutes of limitation were and are as inapplicable in favor of the bank as they were inoperative in favor of the lawful guardian; nothing to effect an exception being averred in this bill. Because in both the Lee and Wolffe Cases, supra, the court employed the descriptive term "trustee in invitum" to characterize such a participant in the breach of an express trust—a term ordinarily definitive of a constructive trust (Sanford v. Hamner, 115 Ala. 406. 414, 22 South. 117)—it is insisted for appellee that, in any event, the statutes of limitation became operative, began to run against the ward, when these trust funds were diverted or were applied in 1907 to the individual benefit of the guardian; this in virtue of the long-established rule that against the enforcement of rights that the law as well as the equity courts may redress, resulting from a constructive trust, the constructive trustee may invoke the statute of limitations, which begins to run from the time of the committal of the wrong or breach charged (James v. James, 55 Ala. 525, 532; McCarthy v. McCarthy, 74 Ala. 546, 553; Martin v. Bank, 31 Ala. 115, 121, among others). The inefficacy of this argument for appellee results from the fact that the decisions in our Lee and Wolffe Cases, supra, characterized the trust relation created by such conscious participation in the breach of the trust by a third person, under the particular circumstances averred, as something more than a mere constructive trust—as imposing obligations on such third person coincident and coextensive with the obligations resting upon the rightful, lawful trustee or guardian. The trustee in invitum was held, in Houston v. Farris, 93 Ala. 587, 589, 11 South. 330 (Stone, C. J., writing), to be synonymous with trustee de son tort; and in 1 Perry on Trusts (5th Ed.) § 245, note (a), it is said a trustee in invitum is also styled a trustee ex maleficio. It is to be noted, however, that both Beach and Hill on Trustees characterize persons becoming trustees by their own acts as constructive trustees. 2 Beach on Trusts, § 374, note 5; Hill on Trustees, pp. 263, 264 (top), and notes. The stated pronouncements of our Lee and Wolffe Cases, defining to a wider effect and a broader obligation the trust relation such a conscious participation in the breach of the trust imposes, is due, doubtless, to the tortious character or quality of such participant's act in the premises; and these pronouncements have been too long extant and authoritative now to justify their modification. Adherence to the doctrine of those decisions (Lee and Wolffe), would require the holding that on the facts averred in this bill the statutes of limitation are not applicable as the appellee's demurrer proposes; and, since the complainant (appellant) is entitled to be subrogated to and to assert the rights the ward, the cestui que trust, might have asserted against the appellee, to the extent the appellee knowingly participated for its own advantage in the averred misappropriation for which the appellant, as the guardian's surety, was compelled to account, the bill is not subject to the ground of the demurrer taking the objection that the claim alleged against appellee was or would have been barred by the statutes of limitation had the ward, the cestui que trust, sought the enforcement of the liability upon which the averments of the bill rely.

The foregoing represents the views of the writer, with whom Chief Justice ANDERSON concurs; but the majority of the court, consisting of Justices SAYRE, SOMERVILLE, GARDNER, THOMAS, and MILLER, are not in accord with these views, and entertain the opinion that the demurrer presenting the question of the bar of the statute of limitations was well taken and properly sustained. The views of the majority are stated by Justice GARDNER, as follows:

[1] The statement of the case presented in the opinion of Justice McCLELLAN discloses that the right of action in favor of Estelle Manegold, now Mrs. Beavan, arose in the year 1907, and that she reached her

majority in 1908. The bill was filed in 1919. The complainant, the bonding company, as surety for Estelle Manegold, seeks to be subrogated to her rights in the enforcement of the claim against the bank, but the complainant as surety can stand in no higher position than the principal. Colvin v. Owens, 22 Ala. 782; Houston, Ex'r, v. Branch Bk., 25 Ala. 250. This principle is likewise applicable so far as the running of the statute of limitations is concerned. 17 R. C. L. 833.

[2, 3] The bill shows that the respondent bank received money which in equity and good conscience belonged to Estelle Manegold, and her right of action accrued at the date of the receipt of this money. Larue v. Kershaw, 177 Ala. 441, 59 South. 155; Martin v. Branch Bank, 31 Ala. 115. Upon the receipt of this money by the bank an action arose in favor of said Estelle Manegold for money had and received, which action is barred in six years from the date of the accrual thereof. The bill does not seek the recovery of any specific property, but only to fasten a pecuniary liability. Such a suit could be maintained at law, and as said by this court in its early history, in the case of Maury's Adm'r v. Mason's Adm'r, 8 Port. 211:

"Whenever the subject-matter of a trust can be sued for at law, the statute of limitations may be insisted on as a bar, although the remedy is pursued in a court of equity."

And in Scruggs v. Decatur Min. Land Co., 86 Ala. 173, 5 South. 440, it was said:

"The complainant must positively and distinctly aver the facts and circumstances which constitute an exception to the statute, or which excuse or explain the long acquiescence and delay."

[4] It is sought by counsel for complainant to bring the case from without the general rule as to the statute of limitations by showing that the facts alleged constitute such a trust relationship as against a breach of which the statute of limitations presents no bar. It cannot be contended under the averments of this bill that there are any elements of an express trust as between Estelle Manegold and the bank. McCarthy v. McCarthy, 74 Ala. 546.

It is not pretended that the bank in any manner ever declared itself the trustee of funds shown to have been recovered in this suit, or at any time recognized the rights of Estelle Manegold to these funds. We think it clear therefore that, if the bank is a trustee at all, it was such in invitum or the trustee of a constructive trust.

[5] It is well recognized that constructive trusts are within the operation of the statute of limitations. We quote the following from James v. James, 55 Ala. 525, as applicable here:

"It was, however, a constructive, not an express, trust. It is 'superinduced upon the transaction by operation of law, as matter of equity, independent of the particular intention of the parties.' * * * The recovery sought in this case is pecuniary, not of property, or its possession. The uniform course of decision in this court has been that such trusts are within the operation of the statute of limitations, and all remedy for their enforcement barred by the limitation which would bar a corresponding legal right and remedy in courts of law. * * *

"It is no longer a question whether a court of equity obeys the statute of limitations, or adopts it by analogy. The statute expressly declares that the limitation of suits at law shall apply to suits in chancery. * * * If the right now asserted was legal, and the remedy pursued in a court of law, it would be in form an action for use and occupation, and for money had and received, barred by the lapse of six years from the time the cause of action accrued."

The following quotation from Martin v. Branch Bank, supra, is likewise pertinent:

"Upon the foregoing facts, a right accrued to the complainant to recover from the respondent the several sums collected by him on the Austin note. That right accrued, as to each sum so collected by him, as soon as he collected it. As to those sums, he was the trustee of the complainant; but he acquired his character of trustee only by implication. No express or direct trust as to him is shown. The right of the complainant, as against him, is founded entirely upon an implied trust. And beyond all doubt, the statute of limitations of six years is, in a court of equity, applicable to this case, and to all other cases of implied trusts in relation to personal property; and the right of action, in equity, will be considered as barred in six years, in analogy to the limitation at law, unless the bar, when set up as a defense, is avoided by matter alleged in the bill and duly established."

These principles have not been departed from in this court. On the contrary, in the very recent case of Blythe v. Enslen, 203 Ala. 692, 85 South. 1, this principle was fully recognized, and the following quotation from Wood on Limitations, vol. 2 (4th Ed.) § 200, approved:

"It is well settled that a subsisting, recognized and acknowledged trust, as between the trustees and cestui que trust, is not within the operation of the statute of limitations. But this rule must be understood as applying only to those technical and continuing trusts which are alone cognizable in a court of equity; and trusts which arise from an implication of law, or constructive trusts, are not within the rule, but are subject to the operation of the statute, unless there has been a fraudulent concealment of the cause of action, and the statute is as complete a bar in equity as at law."

It was likewise recognized in the recent case of Veitch v. Woodward Iron Co., 200 Ala. 358, 76 South. 124.

The opinion of Mr. Justice McCLELLAN rests the conclusion upon the language of the

court in the cases of Lee v. Lee and Wolffe v. State, supra. In both of these cases the language of the opinion is that the conduct of the parties constituted them trustees in invitum. The expression of the court in the Lee Case that the company and Lee were joint trustees of the fund and liable to account as such to the beneficiary was but the expression of a well-understood principle of law, but which in no manner involved the question of the statute of limitations. They were trustees—Lee a trustee by an express trust, and the respondent company a trustee in invitum, under such circumstances as constituted a constructive trust. We do not understand the language of these opinions to militate in the least against the conclusion which the majority have here reached. The bank, under the allegations of this bill, was a trustee in invitum. There was created a constructive trust, and, under all the authorities, the statute of limitations is applicable.

[6, 7] As previously stated, the bill showing prima facie that the cause of action is barred, it was incumbent upon the complainant to clearly state facts and circumstances which would bring the cause from without the operation of the statute of limitations. It is not pretended that any fraud or concealment is shown as would come within the operation of our statute to relieve the case from the bar of limitations. Estelle Manegold became of age in 1908, but her previous disabilities did not suspend the operation of the statute. Riggs v. Fuller, 54 Ala. 141.

[8] Nor can it be insisted that the fact that her guardian procured from her a receipt discharging him as such, followed by a court decree to like effect, could be held to suspend the statute of limitations until this decree had been set aside. The bank, so far as here appears, had nothing to do with the receipt or the settlement, with the procurement of the decree of the chancery court, or knew that such a receipt had been procured or decree rendered. It was not a party to the suit wherein the decree was procured. The statute of limitations had already begun to run. There is no exception under our statute applicable to a case of this character, and we are of the opinion that this suit did not operate to suspend the statute of limitations. Wagner v. Buttles, 151 Wis. 668, 139 N. W. 425, Ann. Cas. 1914B, 147.

As previously stated, the bill shows a right of action in Estelle Manegold to recover in a court of law for money had and received, and that such a right of action was long since barred by the statute of limitations at the time the bill was filed. The bank is attempted to be held liable under the doctrine of constructive trusts, to which the statute of limitations is applicable; and, as said by this court in Blythe v. Enslen, supra:

"The respondents are entitled to the benefit of this statute of limitations in a case of this character under the express provisions of section 3091 of the Code of 1907."

We are therefore of the opinion that the bill discloses on its face that the right of action here sought to be enforced is barred by the statute of limitations of six years, and that the decree sustaining the demurrer was correct, and should have been affirmed.

It results from the foregoing views of the majority that the decree of the court below is correct, and will be here affirmed.

SAYRE, SOMERVILLE, GARDNER, THOMAS, and MILLER, JJ., concur.

ANDERSON, C. J., and McCLELLAN, J., dissent, as stated in opinion.